SMITH v ROBBINS

Docket No. 78-2529. Submitted April 5, 1979, at Grand Rapids.—
Decided July 10, 1979. Leave to appeal applied for.

Plaintiff, Sandra K. Smith, brought an action seeking an order of
filiation against defendant, James Robbins, claiming that defen-
dant was the father of her child, Kendall Wayne Smith. Defen-
dant filed a motion for summary judgment, alleging that plain-
tiff failed to state a claim for which relief could be granted
because the child was conceived and born while plaintiff was
married to Clinton Smith, Jr. The same day the parties stipu-
lated the following: plaintiff and Smith were married on June
7, 1969; from January 10, 1970, to January 27, 1971, Smith was
in the Army and during that period plaintiff neither saw nor
cohabited with him; the child was born on January 27, 1971; in
June, 1971, Smith filed for divorce alleging that he was not the
natural father of the child and later amended his complaint to
allege no children were born of the marriage; and, the divorce
judgment finally granted made no reference to children. The
Antrim Circuit Court, Charles M. Forster, J., denied defen-
dant's motion and, after a bench trial, entered a judgment of
filiation and an order for support. Defendant appeals. *Held:*

1. A child is born "out of wedlock" when its mother and
father are not married to each other, regardless of the parents'
relationships to third persons. Under the Paternity Act the
mother and father of a child born out of wedlock have a duty to
support the child.

2. The standard of proof in paternity proceedings is proof by
a preponderance of the evidence.

Affirmed.

1. BASTARDS — PATERNITY ACT — WORDS AND PHRASES — HUSBAND
   AND WIFE — STATUTES.
   The definition in the Paternity Act of a child born out of wedlock

REFERENCES FOR POINTS IN HEADNOTES
[1] 10 Am Jur 2d, Bastards §§ 1-9, 17.
[2] 10 Am Jur 2d, Bastards §§ 10-18.
Who may dispute presumption of legitimacy of child conceived or
born during wedlock. 90 ALR3d 1032.

is "a child begotten and born to any woman who was unmarried from the conception to the date of birth of the child"; a literal reading of this definition would place a child born to a married woman outside the ambit of the act even where the father of the child is not the husband; such a result is unacceptable; the Paternity Act is operative where the mother is not lawfully married to the father of the child (MCL 722.711 *et seq.*; MSA 25.491 *et seq.*).

2. BASTARDS — PATERNITY PROCEEDINGS — STANDARD OF PROOF — PREPONDERANCE OF EVIDENCE.

The standard of proof in a paternity action is proof by a preponderance of the evidence.

*James Young,* Prosecuting Attorney, and *David J. Churchill,* Assistant Prosecuting Attorney, for plaintiff.

*Tremp & Derman, P.C.,* for defendant.

Before: D. E. HOLBROOK, JR., P.J., and R. B. BURNS and BASHARA, JJ.

BASHARA, J. Defendant appeals from a denial of a motion for rehearing and for a new trial. A judgment of filiation and an order for support were entered after the trial court found the defendant was the father of Kendall Wayne Smith, a child born to plaintiff.

Plaintiff filed a complaint seeking an order of filiation, alleging the defendant fathered her child. Plaintiff claims the child was conceived about April 5, 1970, and born January 27, 1971.

Defendant then filed a motion for summary judgment, alleging that plaintiff had not stated a claim upon which relief could be granted, GCR 1963, 117.2(1), because the child was conceived and born while plaintiff was married to Clinton Smith, Jr.

On the same day, the parties filed a stipulation

of facts which stated that the plaintiff and Smith were married on June 7, 1969; that from January 10, 1970, to January 27, 1971, Smith was in the Army and plaintiff neither saw nor cohabited with him during that period; that the child was born January 27, 1971; that in June, 1971, Smith filed a complaint for divorce, which alleged he was not the natural father of the child. An amended complaint for divorce was filed June 22, 1972, alleging that there were no children born of the marriage, and on November 13, 1972, divorce was granted, the judgment making no reference to children.

The trial court, in denying the motion for summary judgment, ruled that the preamble, §§ 1(a)-(c) and § 16 of the Michigan Paternity Act, MCL 722.711(a)-(c); MSA 25.491(a)-(c), MCL 722.726; MSA 25.506, were unconstitutional on equal protection grounds.

The action proceeded to trial where testimony was taken from plaintiff, defendant and Smith's family, with whom plaintiff resided while he was in the service.

The court found that defendant was the biological father, and made the following findings of fact: that defendant and plaintiff had sexual intercourse in March and April of 1970; that plaintiff did not have sexual intercourse with any other individual during that time period; that defendant and plaintiff took no precautions to avoid pregnancy; and that plaintiff's last menstrual period before the child's birth was in March of 1970.

On appeal, defendant raises numerous issues, only three of which merit discussion.

I

CONSTITUTIONALITY OF THE MICHIGAN PATERNITY ACT, MCL 722.711 *et seq.;* MSA 25.491 *et seq.*

The trial court found that the Michigan Paternity Act denies equal protection to a child conceived and born during his mother's marriage to other than the biological father.

A child born during marriage is accorded a strong but not irrebuttable presumption of legitimacy. *People v Case,* 171 Mich 282, 284; 137 NW 55 (1912). The possibility of the presumption being overcome has been greatly enhanced since "Lord Mansfield's Rule" barring testimony of nonaccess during marriage has been found to be invalid. *Serafin v Serafin,* 401 Mich 629; 258 NW2d 461 (1977).

The adverse consequences once attendant upon the status of illegitimacy have been greatly diminished by statutory enactments.[1]

Under the Michigan Paternity Act, MCL 722.711 *et seq.;* MSA 25.491 *et seq.,* an illegitimate child can require his biological father to provide support. Section 2(a) of the act provides that the "parents of a child so born out of wedlock are liable for the necessary support and education of the child". "Out of wedlock" is defined in section 1(a) of the act as,

"A child born out of wedlock is a child begotten and born to any woman who was unmarried from the conception to the date of birth of the child."

Defendant argues that since Kendall Wayne Smith was born while his mother was married, he

---

[1] MCL 702.81; MSA 27.3178(151) provides that an illegitimate may inherit from his or her mother. MCL 702.83; MSA 27.3178(153) allows an illegitimate to be legitimatized by the parents even absent their marriage, and if legitimatized, the child has the identical status, rights and duties of a child born in lawful wedlock.

is prohibited by the terms of the statute to turn to his biological father for support.[2]

An individual is entitled to equal protection under the law. US Const, Am XIV; Const 1963, art 1, § 2. A legislative classification may not be arbitrary. There must be a rational relation between the classification and the purpose of the act in which it is found. *United States Dep't of Agriculture v Moreno,* 413 US 528, 533; 93 S Ct 2821; 37 L Ed 2d 782 (1973), *Fox v Employment Security Comm,* 379 Mich 579, 588; 153 NW2d 644 (1967).

Numerous recent United States Supreme Court decisions have found disparate statutory treatment between illegitimate and legitimate children to be constitutionally invalid.[3]

If our paternity statute is interpreted as creating a distinction between support provided for an illegitimate child of an unwed mother and the

---

[2] Defendant supports his claim by citing the case of *Winsett v Donaldson,* 69 Mich App 36; 244 NW2d 355 (1976). In that case the defendant was seeking a formal determination of his paternity prior to taking further action to obtain custody of the child. The court found that since the mother of the child had been married to someone other than defendant at the time of the alleged conception, defendant could not proceed under the Paternity Act. It must be noted that this action was prior to *Serafin, supra,* and defendant could have proceeded under the child custody act of 1970.

[3] In *Gomez v Perez,* 409 US 535; 93 S Ct 872; 35 L Ed 2d 56 (1973), a law granting legitimate children support rights from their natural fathers while denying the same to illegitimate children was declared unconstitutional.

*Trimble v Gordon,* 430 US 762; 97 S Ct 1459; 52 L Ed 2d 31 (1977), struck down a statute allowing an illegitimate child to inherit only through his mother.

*Glona v American Guarantee & Liability Ins Co,* 391 US 73; 88 S Ct 1515; 20 L Ed 2d 441 (1968), invalidated Louisiana's wrongful death statute providing that parents could only recover from the death of their legitimate children and only legitimate children could sue for the death of their parents. See also *Levy v Louisiana,* 391 US 68; 88 S Ct 1509; 20 L Ed 2d 436 (1968).

In *Weber v Aetna Casualty & Surety Co,* 406 US 164; 92 S Ct 1400; 31 L Ed 2d 768 (1972), a workmen's compensation law that did not allow illegitimate children to recover benefits from the death of their wage earning parent was found unconstitutional.

illegitimate child of a married mother, a clearly irrational classification exists and the statute will be rendered unconstitutional. This was the finding of the trial court.

However, we seek to construe statutes so as to sustain the constitutionality of the statutory scheme. *Schwartz v Secretary of State,* 393 Mich 42, 50; 222 NW2d 517 (1974). The primary rule of statutory construction is to determine and effectuate the Legislature's intent. Toward that end, statutory language should be given a reasonable construction considering the purpose of the statute and the object sought to be accomplished. *King v Director of The Midland County Dep't of Social Services,* 73 Mich App 253, 258; 251 NW2d 270 (1977).

The purpose of the Paternity Act is to provide for the support of an illegitimate child. The announced public policy of this state is to treat children born out of wedlock as no less deserving of support than those born in wedlock. *Boyles v Brown,* 69 Mich App 480; 245 NW2d 100 (1976).

Other jurisdictions, when faced with defining "out of wedlock", have determined that no distinction exists between the true illegitimate and the social illegitimate.[4]

In *State v Coliton,* 73 ND 582, 586; 17 NW2d 546 (1945), the Supreme Court of North Dakota embarked upon a detailed analysis of the common-law concepts of illegitimacy and construction of the nature of wedlock in light of common-law notions. The court concluded that, since a married woman may have an illegitimate child:

"The term 'wedlock' refers to the status of the man

---

[4] It should be noted that Webster's Third New International Dictionary defines illegitimate as being "born of parents not married to each other".

and his wife, not the status of the woman and her paramour. As to the latter, there is no wedlock and the child born to them is born out of wedlock. Because it is thus born out of wedlock and is therefore illegitimate, the natural father can be required to support it."

The Supreme Court of North Carolina in *Wright v Gann,* 27 NC App 45, 47; 217 SE2d 761 (1975), held that:

"The father of an illegitimate child has a legal duty to support his child. * * * Where a married woman has an illegitimate child, the father has the duty to support his child and not the woman's husband. * * *

"North Carolina does not impose upon a husband the burden of supporting another man's offspring. The legislature, by enacting G.S. 49-14, intended to establish a means of support for illegitimate children. Statutory construction should seek to accomplish that purpose and not frustrate legislative intent. We interpret the phrase 'out of wedlock' in the statute as referring to the status of the child and not to the status of the mother."

As emphasized in *Martin v Lane,* 57 Misc 2d 4, 6; 291 NYS2d 135 (1968):

"The layman's understanding of the term 'child born out of wedlock' means unquestionably 'a child whose father is not the mother's husband' * * *. To hold otherwise * * * would infer that the Legislature was not cognizant of the common understanding of men."

See also *Leonard v Leonard,* 360 So 2d 710 (Ala, 1978), *In the Matter of the Estate of Robert A. Marriott, Deceased,* 515 P2d 571, 573 (Okla, 1973), *Pursley v Hisch,* 119 Ind App 232; 85 NE2d 270 (1949).

The main objective sought to be accomplished by use of these various interpretations is to uphold

legislation that mandates a child be supported by the biological father. *B V O*, 50 NJ 93; 232 A2d 401 (1967), *Ingalls Shipbuilding Corp v Neuman*, 322 F Supp 1229, 1241 (SD Miss, 1970), *King v King*, 544 SW2d 795 (Tex Civ App, 1976).

Although the Michigan act adds an additional element, that of "unmarried", to the definition of an illegitimate child, "unmarried" and "out of wedlock" are not so substantially different that a construction of unmarried to include not lawfully married to the father of the child unduly strains the statutory language.

Judge V. J. BRENNAN, in a dissenting opinion in the recent case of *Pruitt v Pruitt*, 90 Mich App 230, 236; 282 NW2d 785 (1979), recognized the possible constitutional violation in the statute, although the majority did not reach the issue. He stated that "[a] literal reading * * * places the child in the case at bar (since the mother was married at the time of birth) outside the ambit of that act. Such a result is unacceptable. I would hold the Paternity Act operative where the mother of the child is not lawfully married to the father of the child".

We join with Judge BRENNAN in his interpretation of the Paternity Act.

## II

### STANDARD OF PROOF

The next issue raised is whether there was sufficient evidence for the trial court's determination that defendant was the father of the child.

Paternity proceedings are quasi-criminal in nature. *Artibee v Cheboygan Circuit Judge*, 397 Mich 54, 57; 243 NW2d 248 (1976). The defendant is afforded the right to a jury trial, to appointed

counsel, and protection against double jeopardy. *Pruitt v Pruitt, supra.*

However, the full panoply of criminal procedural protections have not been extended to paternity defendants. The standard of proof in a paternity proceeding is not, as defendant claims, proof beyond a reasonable doubt, but proof by a preponderance of the evidence. *Huggins v Rahfeldt,* 83 Mich App 740; 269 NW2d 286 (1978).

A review of the evidence convinces us that the findings of the trial judge were not clearly erroneous.

### III

#### REPRESENTATION OF THE CHILD

Defendant also claims that the trial court's finding of illegitimacy is voidable since the child was not represented by counsel at the divorce proceeding or in the paternity action, and cannot be bound by plaintiff's and defendant's stipulation of facts.

Although paternity of a third party cannot be determined as part of a divorce proceeding, *Pruitt v Pruitt, supra,* a paternity question involving the parties in a divorce action can be resolved by the court. *Gallison v Gallison,* 5 Mich App 460; 146 NW2d 812 (1966), *Maxwell v Maxwell,* 15 Mich App 607, 616; 167 NW2d 114 (1969).

Defendant cites no authority for his proposition. It must be emphasized that a child is protected by the still strong and viable presumption of legitimacy that can only be rebutted by clear and convincing evidence. *Serafin, supra, Shepherd v Shepherd,* 81 Mich App 465, 469; 265 NW2d 374 (1978).

In reaching its determination, the trial court

considered collectively the divorce judgment, the stipulation, and the testimony of witnesses. A review of the evidence convinces us that the trial court properly found the presumption of legitimacy rebutted by clear and convincing evidence.

Affirmed.