DOE v ATTORNEY GENERAL

Docket No. 50380. Submitted March 9, 1981, at Detroit.—Decided
May 5, 1981. Leave to appeal applied for.

Jane Doe, John Doe, and Mary Roe, pseudonyms for actual
persons, entered into an agreement whereby, because Mrs. Doe
was incapable of bearing children and Mr. and Mrs. Doe
desired a biological child of John Doe, Mary Roe was to act as a
surrogate mother. Mary Roe was to bear a child by means of
artificial insemination, John Doe would acknowledge paternity,
Mary Roe would relinquish all rights to the child, and the Does
would adopt the child. In exchange for her role, the Does were
to pay Mary Roe $5,000 plus medical expenses. The parties to
the agreement brought an action for a declaratory judgment,
naming the Attorney General and the Wayne County Prose-
cutor as defendants, seeking a ruling that a provision in the
Michigan Adoption Code which prohibits the payment of money
or other consideration in connection with adoption proceedings
impermissibly infringes upon their right to privacy. The Wayne
Circuit Court, Roman S. Gribbs, J., granted summary judgment
for the defendants, and the plaintiffs appeal. *Held:*

The plaintiffs' goal of using the adoption code to change the
legal status of the child is not within the fundamental interests
protected by the right to privacy. The summary judgment for
defendants was proper.

Affirmed.

PARENT AND CHILD — ADOPTION — PAYMENT FOR ADOPTION PROCEED-
INGS — STATUTES.

The Michigan Adoption Code's prohibition of the exchange of
money or other consideration in connection with adoption
proceedings precludes payment to a surrogate mother pursuant
to an agreement wherein a married couple, the wife unable to
bear children, arrange for the surrogate to bear a child by
means of artificial insemination and release the child to the
couple for adoption; such an agreement discloses a desire to use

REFERENCES FOR POINTS IN HEADNOTES
[1] 2 Am Jur 2d, Adoption § 14.
   59 Am Jur 2d, Parent and Child § 37.

the adoption code to change the legal status of the child, which is not within the fundamental interests protected by the right to privacy (MCL 710.54; MSA 27.3178[555.54]).

*Robert S. Harrison* and *Noel P. Keane,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Eugene Krasicky* and *George M. Elworth,* Assistants Attorney General, for the Attorney General.

*William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Anne B. Wetherholt,* Assistant Prosecuting Attorney, for the Wayne County Prosecutor.

Before: V. J. BRENNAN, P.J., and M. J. KELLY and D. C. RILEY, JJ.

M. J. KELLY, J. In this case, we are asked to declare unconstitutional those sections of the Michigan Adoption Code, MCL 710.54; MSA 27.3178(555.54) and MCL 710.69; MSA 27.3178(555.69), which prohibit the exchange of money or other consideration in connection with adoption and related proceedings.[1] The plaintiffs

---

[1] The statutory provisions sought to be declared invalid provide:

"Sec. 54. (1) Except for charges and fees approved by the court, a person shall not offer, give, or receive any money or other consideration or thing of value in connection with any of the following:

"(a) The placing of a child for adoption.

"(b) The registration, recording, or communication of the existence of a child available for adoption or the existence of a person interested in adopting a child.

"(c) A release.

"(d) A consent.

"(e) A petition.

"(2) Before the entry of the final order of adoption, the petitioner shall file with the court a sworn statement describing money or other consideration or thing of value paid to or exchanged by any party in the adoption proceeding, including anyone consenting to the adoption

appeal of right from a January 29, 1980, order of the lower court, denying their motion for summary judgment under GCR 1963, 117.2(3) and granting the defendants' own motion under the same rule. The parties are in agreement as to the pertinent facts in this decision.

Jane Doe and John Doe are pseudonyms for a married couple residing in Wayne County. In response to interrogatories posed by the Attorney General concerning the Does' marriage and whether any children were born of the marriage, the Does filed virtually identical affidavits stating the following information:

"2. That he [she] was married in the City of Farmington, Michigan, on August 20, 1965.

"3. That he [she] is the father [mother] of two sons, ages eleven and seven years."

From the nonresponsive answer to question 3, we are unable to say whether the two children were born of the Does' marriage or are adopted.

It is alleged that Jane Doe has undergone a

or adopting the adoptee, any relative of a party or of the adoptee, any physician, attorney, social worker or member of the clergy, and any other person, corporation, association, or other organization. The court shall approve or disapprove fees and expenses. Acceptance or retention of amounts in excess of those approved by the court constitutes a violation of this section.

"(3) To assure compliance with limitations imposed by this section, by section 14 of Act No. 116 of the Public Acts of 1973, being section 722.124 of the Michigan Compiled Laws, and by section 4 of Act No. 263 of the Public Acts of 1913, as amended, being section 331.404 of the Michigan Compiled Laws, the court may require sworn testimony from persons who were involved in any way in informing, notifying, exchanging information, identifying, locating, assisting, or in any other way participating in the contracts or arrangements which, directly or indirectly, led to placement of the person for adoption."

"Sec. 69. A person who violates any of the provisions of sections 41 and 54 of this chapter shall, upon conviction, be guilty of a misdemeanor, and upon any subsequent conviction shall be guilty of a felony."

tubal ligation, rendering her biologically incapable of bearing children and that the Does "wish to have a child biologically related to JOHN DOE". Mary Roe is employed as a secretary by John Doe and also resides in Wayne County. The complaint alleges that these parties contemplate and intend to enter into the following agreement:

"(a) That JANE DOE and JOHN DOE will pay MARY ROE a sum of money in consideration for her promise to bear and deliver JOHN DOE's child by means of artificial insemination.

"(b) That a licensed physician will conduct the artificial insemination process.

"(c) That prior to the delivery of said child, JOHN DOE will file a notice of intent to claim paternity.

"(d) That at the time the child is born, JOHN DOE will formally acknowledge the paternity of said child.

"(e) That MARY ROE will acknowledge that JOHN DOE is the father of said child.

"(f) That MARY ROE will consent to the adoption of said child by JOHN DOE and JANE DOE".

The agreement also provided that plaintiffs would pay to Mary Roe the sum of $5,000 plus medical expenses. In addition, Mary Roe would be covered by sick leave, pregnancy disability insurance, and medical insurance from her employment while she is off work having the child and recuperating from the delivery.

The plaintiffs allege that the disputed statutory provisions impermissibly infringe upon their constitutional right to privacy. This right, first recognized in *Griswold v Connecticut,* 381 US 479; 85 S Ct 1678; 14 L Ed 2d 510 (1965), was more recently described in *Carey v Population Services International,* 431 US 678; 97 S Ct 2010; 52 L Ed 2d 675 (1977). In *Carey,* the Court specifically held that the decision "whether or not to bear or beget a child" was among those protected by the constitu-

tional right of privacy.[2] See also *Harris v McRae,* 448 US 297; 100 S Ct 2671; 65 L Ed 2d 784 (1980). ("The constitutional underpinning of *Wade [Roe v Wade,* 410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1973)] was a recognition that the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment includes not only the freedoms explictly mentioned in the Bill of Rights, but also a freedom of personal choice in certain matters of marriage and family life".)

While the decision to bear or beget a child has thus been found to be a fundamental interest protected by the right of privacy, see *Maher v Roe,* 432 US 464; 97 S Ct 2376; 53 L Ed 2d 484 (1977), we do not view this right as a valid prohibition to state interference in the plaintiffs' contractual arrangement. The statute in question does not directly prohibit John Doe and Mary Roe from

---

[2] The *Carey* Court summarized those previous decisions in which the right of privacy prohibited unwarranted governmental interference or regulation and which compelled the Court's conclusion as to the right to bear children:

"Although '[t]he Constitution does not explicitly mention any right of privacy,' the Court has recognized that one aspect of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment is 'a right of personal privacy, or a guarantee of certain areas or zones of privacy.' *Roe v Wade,* 410 US 113, 152 [93 S Ct 705; 35 L Ed 2d 147] (1973). This right of personal privacy includes 'the interest in independence in making certain kinds of important decisions.' *Whalen v Roe,* 429 US 589, 599-611 [97 S Ct 869; 51 L Ed 2d 64] (1977). While the outer limits of this aspect of privacy have not been marked by the Court, it is clear that among the decisions that an individual may make without unjustified government interference are personal decisions 'relating to marriage, *Loving v Virginia,* 388 US 1, 12 [87 S Ct 1817; 18 L Ed 2d 1010] (1967); procreation, *Skinner v Oklahoma,* 316 US 535, 541-542 [62 S Ct 1110; 86 L Ed 1655] (1942); contraception, *Eisenstadt v Baird,* 405 US [438], at 453-454 [92 S Ct 1029; 31 L Ed 2d 349 (1972)]; *id.,* at 460, 463-465 (White, J., concurring in result); family relationships, *Prince v Massachusetts,* 321 US 158, 166 [64 S Ct 438; 88 L Ed 645] (1944); and child rearing and education, *Pierce v Society of Sisters,* 268 US 510, 535 [45 S Ct 571; 69 L Ed 1070; 39 ALR 468] (1925); *Meyer v Nebraska,* [262 US 390, 399; 43 S Ct 625; 67 L Ed 1042; 29 ALR 1446 (1923)].' *Roe v Wade, supra,* at ·152-153. See also *Cleveland Board of Education v LaFleur,* 414 US 632, 639-640 [94 S Ct 791; 39 L Ed 2d 52] (1974)." 431 US 678, 684-685.

having the child as planned. It acts instead to preclude plaintiffs from paying consideration in conjunction with their use of the state's adoption procedures. In effect, the plaintiffs' contractual agreement discloses a desire to use the adoption code to change the legal status of the child—*i.e.,* its right to support, intestate succession, etc. We do not perceive this goal as within the realm of fundamental interests protected by the right to privacy from reasonable governmental regulation.

The plaintiffs also allege that the state has no compelling interest sufficient to justify the prohibitions embodied in the disputed statutes and, in addition, that the provisions are drawn too wide to reflect any legitimate state interests in this area. Our disposition of the foregoing issue, however, renders consideration of this issue unnecessary.

Affirmed.