SYRKOWSKI v APPLEYARD

Docket No. 61452. Submitted June 24, 1982, at Detroit.—Decided
  January 19, 1983. Leave to appeal applied for.

  George Syrkowski brought an action in Wayne Circuit Court
    under The Paternity Act seeking an order of filiation and entry
    of his name on the birth certificate as the natural and legal
    father of a child to be born of Corinne Appleyard. Mrs. Apple-
    yard, the named defendant, admitted all the allegations in
    Syrkowski's complaint and also requested the order of filiation
    and entry upon the birth certificate of Syrkowski's name as
    natural and legal father of the child. Syrkowski filed a notice of
    intent to claim paternity. The parties filed a proposed order of
    filiation which stated that it would be in the best interests of
    the child for the circuit court to determine that Syrkowski was
    the natural and legal father of the child, that Syrkowski be
    awarded custody of the child, that Syrkowski's name be entered
    on the child's birth certificate as the father, and that the child
    bear the surname of Syrkowski. In support of the motion for
    entry of the consent order of filiation, an affidavit was filed by
    Corinne Appleyard and her husband, Roger A. Appleyard, that
    they had abstained from sexual intercourse for a period from
    six weeks before to four weeks after the dates on which Mrs.
    Appleyard was artificially inseminated with the sperm of
    George Syrkowski. The Attorney General intervened as a de-
    fendant and moved for accelerated judgment on the basis that
    the trial court did not have jurisdiction over the action because
    The Paternity Act was not intended to cover surrogate mother

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes §§ 145, 146.
[2] 73 Am Jur 2d, Statutes § 194.
[3] 10 Am Jur 2d, Bastards § 68.
  59 Am Jur 2d, Parent and Child §§ 50, 51.
  Determination of paternity of child as within scope of proceeding
    under Uniform Reciprocal Enforcement of Support Act. 81
    ALR3d 1175.
[4] 73 Am Jur 2d, Statutes § 153.
[5, 6] 59 Am Jur 2d, Parent and Child § 2.
  Legal consequences of human artificial insemination. 25 ALR3d
    1103.

arrangements. Mr. Appleyard intervened as a defendant. Syrkowski, Mrs. Appleyard and Mr. Appleyard each opposed the motion for accelerated judgment. Roman S. Gribbs, J., granted the motion. Syrkowski and Mrs. Appleyard appeal by leave granted. *Held:*

The purpose of The Paternity Act is to provide for the support of children born out of wedlock. That act was not intended to encompass the situation, as here, where the birth is the result of a financial transaction involving a surrogate parent. The scope of The Paternity Act should not be judicially enlarged to include the surrogate parent situation, but rather any change should be the result of studied legislation.

Affirmed.

P. J. MAHINSKE, J., dissented. He would hold that Mr. Appleyard's statement of nonconsent to the artificial insemination of his wife is sufficient under the Public Health Code to rebut the statutory presumption of legitimacy of the child. Accordingly, there would be a jurisdictional basis for a paternity action under The Paternity Act by the donor of the sperm used in the artificial insemination. He would reverse.

OPINION OF THE COURT

1. STATUTES — JUDICIAL CONSTRUCTION.

Statutes are to be construed as they were intended to be understood when they were passed.

2. STATUTES — JUDICIAL CONSTRUCTION.

Courts have a duty to enforce unambiguous statutes as written.

3. PARENT AND CHILD — PATERNITY ACT.

The primary purpose of The Paternity Act is to provide support for children born out of wedlock (MCL 722.711 *et seq.;* MSA 25.491 *et seq.).*

4. STATE — PUBLIC POLICY.

Public policy may be constitutionally, legislatively, or judicially declared; public policy may also abide in the customs and conventions of the people.

5. PARENT AND CHILD — PATERNITY ACT — SURROGATE PARENT.

The purpose of The Paternity Act is to provide support for children born out of wedlock and is not intended to encompass the situation where the birth is the result of a financial transaction involving a surrogate parent; the scope of The Paternity Act should not be judicially enlarged to include the

surrogate parent situation, but rather any change should be the result of studied legislation.

DISSENT BY P. R. MAHINSKE, J.

6. PARENT AND CHILD — PATERNITY ACT — SURROGATE PARENT —
   COURTS — JURISDICTION.
   *A statement of nonconsent to artificial insemination by the husband of a woman who gives birth to a child by artificial insemination will defeat the statutory presumption of legitimacy of the child and an action under The Paternity Act by the donor of the sperm used in the artificial insemination may fall within the jurisdiction of the circuit court (MCL 333.2824[6], 722.711 et seq.; MSA 14.15[2824][6], 25.491 et seq.).*

*Noel P. Keane, Robert S. Harrison,* and *John P. Hayes,* for plaintiff and defendant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Eugene Krasicky,* First Assistant Attorney General, and *George M. Elworth,* Assistant Attorney General, for intervening defendant.

Before: CYNAR, P.J., and N. J. KAUFMAN and P. R. MAHINSKE,* JJ.

CYNAR, P.J. On December 11, 1981, plaintiff George Syrkowski and defendant Corinne Appleyard filed a joint application for emergency leave to appeal from the Wayne County Circuit Court.[1] The application for emergency leave to appeal was from the November 25, 1981, order granting the motion for accelerated judgment brought by intervenor-defendant Michigan Attorney General

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] According to appellants' factual statement, plaintiff, a childless married man, entered into an agreement with defendant, a married woman with two children. Defendant agreed to be artificially inseminated with plaintiff's semen by a licensed physician. Upon birth of the child, plaintiff would have custody and defendant would receive $10,000 in addition to her medical expenses.

and the December 7, 1981, final order dismissing plaintiff's paternity action. On February 22, 1982, application for leave to appeal was granted; and the claim of appeal was filed on February 25, 1982. The case was argued during the June, 1982 term. We affirm the decision of the trial court.

On June 8, 1981, George Syrkowski filed a complaint pursuant to § 4(f) of The Paternity Act, MCL 722.714(f); MSA 25.494(f). Syrkowski alleged that he had reason to believe that defendant Corinne Appleyard was pregnant with a child conceived by him on or about March 23, 24, or 25, 1981, in the City of Dearborn Heights, Michigan. It was alleged that the complaint was filed during Mrs. Appleyard's pregnancy. Mr. Syrkowski requested an order of filiation pursuant to § 7(a) of The Paternity Act, MCL 722.717(a); MSA 25.497(a), and entry of his name as the natural father on the child's birth certificate.

On June 23, 1981, Mrs. Appleyard answered admitting all the allegations. She also requested an order of filiation and entry of Mr. Syrkowski's name as the natural and legal father on the child's birth certificate.

Pursuant to § 33 of the Michigan Adoption Code, MCL 710.33; MSA 27.3178(555.33), Mr. Syrkowski filed a notice of intent to claim paternity on July 9, 1981. That same month, the parties filed a proposed consent order of filiation and scheduled a hearing on July 24, 1981, for the entry of that order. The proposed consent order of filiation stated the interests of the child and all parties would be best served by a determination by the circuit judge that: (1) Mr. Syrkowski is the natural and legal father of the child to be born to Mrs. Appleyard in December, 1981, (2) Mr. Syrkowski be awarded full custody and responsibility for the

child, (3) Mr. Syrkowski's name be entered as the father on the child's birth certificate, and (4) the child bear the surname Syrkowski.

In support of the motion for entry of the consent order of filiation, Mr. Syrkowski submitted the affidavit of Mrs. Appleyard and her husband, Roger Appleyard, and the affidavit of Dr. Warren J. Ringold, M.D. Dr. Ringold in his affidavit stated:

"That on March 23, 24, and 25, 1981 in his professional offices, he inseminated Corinne Appleyard with the semen of George Syrkowski, and subsequent thereto she became and is pregnant; and that in his professional medical opinion, George Syrkowski is the father of the child or children to be born to Corinne Appleyard as a result of the pregnancy * * *."

The Appleyards in their affidavit stated:

"That Roger Appleyard and Corinne Appleyard voluntarily abstained from having sexual intercourse for a period of six weeks prior to March 23, 1981.

"That Corinne Appleyard was artificially inseminated with the semen of George Syrkowski by Warren J. Ringold, M.D., on March 23, 24, and 25, 1981.

"That Roger Appleyard and Corinne Appleyard voluntarily abstained from sexual intercourse on the above insemination dates and for a period of four weeks subsequent to March 25, 1981.

"That Corinne Appleyard affirmatively states she did not have sexual intercourse with any person during the above-mentioned ten week period."

No hearing was held on July 24, 1981, on the motion for entry of the consent order of filiation.

On November 9, 1981, the Michigan Attorney General filed a notice of intervention, a motion for accelerated judgment pursuant to GCR 1963,

116.1, a brief in support of that motion, and a notice of hearing for November 13, 1981.

In his motion, the Attorney General alleged that the circuit court did not have jurisdiction over Mr. Syrkowski's action pursuant to The Paternity Act as the action involved a "surrogate mother" arrangement. The Attorney General alleged that Mr. Appleyard was the legal father of the child because he was married to Mrs. Appleyard when she conceived the child and he consented to the artificial insemination. The Attorney General argued that, under the above facts and pursuant to two statutes, MCL 333.2824(6); MSA 14.15(2824)(6), and MCL 700.111(2); MSA 27.5111(2), Mr. Appleyard must be deemed the father of his wife's child.

Mr. Syrkowski replied to the motion and filed a brief in opposition to accelerated judgment on November 13, 1981. In support of this reply, Mr. Syrkowski submitted Mr. Appleyard's April 22, 1981, statement of nonconsent. In that statement, Mr. Appleyard said:

"I, Roger A. Appleyard, husband of Corinne A. Appleyard, who is to become a surrogate mother for an unknown man, acknowledge the existence of Public Act 356 of 1978, Section 2824(6) which provides, 'A child born to a married woman as a result of artificial insemination, with consent of her husband, is considered to be the legitimate child of the husband and wife.' I expressly revoke and withhold my consent for any artificial insemination of my wife in connection with the surrogate arrangements and recognize that by doing so I cannot be declared or considered to be the legal father of said child."

Mrs. Appleyard filed an answer opposing the motion for accelerated judgment. In support of her answer, she submitted the affidavit of her hus-

band. Mr. Appleyard reaffirmed his statement of nonconsent to his wife's artificial insemination.

Mr. Appleyard filed a brief in opposition to the motion for accelerated judgment on November 23, 1981, also incorporating by reference Mr. Syrkowski's brief in its entirety.

In his November 25, 1981, opinion granting the Attorney General's motion for accelerated judgment, the trial judge found that neither the law nor the facts in this case support the Attorney General's argument that a child conceived and born of Mrs. Appleyard during the marriage is conclusively presumed to be the legitimate child of her husband. However, the trial court also observed The Paternity Act was enacted to impose financial responsibility for illegitimate children upon those who fathered them and to protect the children from becoming a public charge.

It was the opinion of the trial court that the relief requested in Mr. Syrkowski's petition was beyond the scope and purpose of The Paternity Act. Accordingly, the motion for accelerated judgment was granted.

Mrs. Appleyard gave birth to Theresa Mary Syrkowski on November 22, 1981, in Sinai Hospital of Detroit.[2]

This action was not commenced as an adversary proceeding but was submitted to the trial court for approval of a consent order of filiation which Mr. Syrkowski, Mrs. Appleyard, and their respective

[2] There is reason to believe that Mr. Syrkowski now has provisional custody of Theresa pursuant to § 405 of the Probate Code, MCL 700.405; MSA 27.5405. That statute says:

"A parent or a guardian of a minor or legally incapacitated person, by a properly executed power of attorney, may delegate to another person for a period not exceeding 6 months, any of the parent's or guardian's powers regarding care, custody, or property of the minor child or ward, except the power to consent to marriage or adoption of a minor ward and the power to release a minor ward for adoption."

counsel had approved as to form and content. The record does not contain a copy of the agreement entered into between Mr. Syrkowski and Mrs. Appleyard. Although the facts submitted for our consideration are limited, we infer that Mr. Syrkowski's inducement for entering into this agreement with Mrs. Appleyard was based on the inability of Mr. Syrkowski and his wife to have children. We recognize the forces which motivate human beings seeking to have children. To assume Mr. Syrkowski's intentions are a pure and a noble attempt to. fulfill the wish to have a child in his family is not sufficient for reaching a result in this appeal. In addition to determining the applicability of the legislation relied upon, we must consider the impact of this decision.

We agree with the trial court's decision to permit intervention by the Attorney General. The issues raised by Mr. Syrkowski and Mrs. Appleyard involve significant matters of state interest and public policy. It is noted that the child in this case has been without legal representation. Interest in the welfare of the child must continue to be of paramount importance to the people of this state.

It was the opinion of the trial court that the relief requested in Mr. Syrkowski's petition was beyond the scope and purpose of The Paternity Act in light of the factual setting upon which the complaint was based.

The preamble to The Paternity Act, MCL 722.711 *et seq.;* MSA 25.491 *et seq.,* provides:

"AN ACT to confer upon circuit courts jurisdiction over proceedings to compel and provide support of children born out of wedlock; to prescribe the procedure for determination of such liability; to authorize agreements providing for furnishing of such support and to

provide for the enforcement thereof; and to prescribe penalties for the violation of certain provisions of this act."

Statutes are to be construed as they were intended to be understood when they were passed. *Wayne County Board of Road Comm'rs v Wayne County Clerk,* 293 Mich 229; 291 NW 879 (1940). Courts have a duty to enforce unambiguous statutes as written. *Scholten v Rhoades,* 67 Mich App 736, 745; 242 NW2d 509 (1976).

The Paternity Act was enacted to provide for support of illegitimate children. *Van Laar v Rozema,* 94 Mich App 619; 288 NW2d 667 (1980); *Tuer v Niedoliwka,* 92 Mich App 694; 285 NW2d 424 (1979); *Smith v Robbins,* 91 Mich App 284; 283 NW2d 725 (1979), *lv den* 408 Mich 853 (1980). The purpose and intent of The Paternity Act is to provide support for a child "born out of wedlock". No amendment to the act has altered the general purpose and intent of the act to the extent that it encompasses the circumstances in this case.

A question is raised whether "surrogate parent arrangements" are contrary to public policy. Public policy may be constitutionally, legislatively, or judicially declared. Public policy may also abide in the customs and conventions of the people. *Skutt v Grand Rapids,* 275 Mich 258, 264; 266 NW 344 (1936).

In *Doe v Attorney General,* 106 Mich App 169; 307 NW2d 438 (1981), *lv den* 414 Mich 875 (1982), a case involving a surrogate mother arrangement, this Court held that the trial court had properly granted summary judgment where the plaintiffs contemplated entering into an agreement whereby they would pay a third party $5,000 plus medical expenses to have a child by Mr. Doe. This Court wrote:

"While the decision to bear or beget a child has thus been found to be a fundamental interest protected by the right of privacy, see *Maher v Roe,* 432 US 464; 97 S Ct 2376; 53 L Ed 2d 484 (1977), we do not view this right as a valid prohibition to state interference in the plaintiffs' contractual arrangement. The statute in question does not directly prohibit John Doe and Mary Roe from having the child as planned. It acts instead to preclude plaintiffs from paying consideration in conjunction with their use of the state's adoption procedures. *In effect, the plaintiffs' contractual agreement discloses a desire to use the adoption code to change the legal status of the child*—i.e., *its right to support, intestate succession, etc. We do not perceive this goal as within the realm of fundamental interests protected by the right to privacy from reasonable governmental regulation.*" (Emphasis added.) *Doe, supra,* pp 173-174.

While we do not decide whether surrogate mother contracts are against public policy, we conclude The Paternity Act's purpose of providing support for children born out of wedlock does not encompass the monetary transaction proposed in this case.

We view the surrogate mother arrangements with caution as we approach an unexplored area in the law which, without a doubt, can have a profound effect on the lives of our people. The courts should not be called upon to enlarge the scope of The Paternity Act to encompass circumstances never contemplated thereby. Studied legislation is needed before surrogate arrangements are recognized as proposed under the facts submitted herein.[3]

Affirmed.

N. J. KAUFMAN, J., concurred.

[3] On reaching our decision our concern has included the ultimate effect upon the child Theresa. The Supreme Court was aware of the problem of identifying the legal parents of the child in *Doe;* the Court, however, denied leave to appeal.

P. J. MAHINSKE, J. *(dissenting)*. In view of Mr. Appleyard's affidavit of April 22, 1981, I believe there is a genuine issue of material fact. If said affiant is believed, the lower court had jurisdiction by virtue of MCL 333.2824(6); MSA 14.15(2824)(6).

I would remand the case to circuit court for a decision on the merits.