SYRKOWSKI v APPLEYARD

Docket No. 71057. Decided January 17, 1985. On applications by the
plaintiff and the defendant for leave to appeal, the Supreme
Court, in lieu of granting leave to appeal, reversed the judg-
ment of the Court of Appeals and remanded the case to the
trial court for further proceedings.

George Syrkowski brought an action in the Wayne Circuit Court
under the Paternity Act against Corinne Appleyard, seeking an
order of filiation and entry of his name on the birth certificate
as the natural father of a child to be born to Mrs. Appleyard.
Mrs. Appleyard admitted all the plaintiff's allegations and
joined in his request for relief. The parties assumed that the
child to be born had been conceived as a result of the artificial
insemination of Mrs. Appleyard with the plaintiff's semen
under an agreement by which Mrs. Appleyard would bear the
plaintiff's child for $10,000 above expenses. The court, Roman
S. Gribbs, J., permitted the Attorney General to intervene and
granted the Attorney General's motion for accelerated judg-
ment on the ground that it lacked jurisdiction to grant the
relief requested because it was beyond the scope and purpose of
the Paternity Act. The Court of Appeals, Cynar, P.J., and N. J.
Kaufman, J. (Mahinske, J., dissenting), affirmed. The plaintiff
and the defendant apply for leave to appeal.

In an opinion per curiam, signed by Chief Justice Williams,
and Justices Levin, Ryan, Brickley, Cavanagh, and Boyle, the
Supreme Court *held:*

The circuit court has subject-matter jurisdiction over a bio-
logical father's request under the Paternity Act for an order of
filiation declaring his paternity of a child where he and the
child's biological mother have entered into a "surrogate parent-
ing" agreement. The act was created as a procedural vehicle for
determining paternity and enforcing the resulting support
obligation, and allows fathers to seek and receive such determi-
nations.

1. The plaintiff is prepared to prove that the child born to the
defendant is a "child born out of wedlock" as defined by the
Paternity Act on the ground that the child was born during the
defendant's marriage, but is not the issue of that marriage, the
child having been conceived through artificial insemination

without the requisite consent of the defendant's husband. Such proof will bring the child within the provisions of the act. The plaintiff is also prepared to offer proof that he is the biological father of the child.

2. While the Legislature might have been motivated in enacting the Paternity Act primarily to provide adequate support for children born out of wedlock, the support obligation cannot be enforced without a preliminary determination of paternity. The act authorizes a father to file a complaint alleging paternity and requesting an order of filiation, and confers jurisdiction on a circuit court to hear the complaint.

Reversed and remanded.

122 Mich App 506; 333 NW2d 90 (1983) reversed.

*Noel P. Keane, P.C.* (by *Noel P. Keane* and *Robert S. Harrison*), for the plaintiff.

*John R. Hayes* for the defendant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Eugene Krasicky,* First Assistant Attorney General, and *George M. Elworth,* Assistant Attorney General, for intervening defendant State of Michigan.

*Williams, Schaefer, Ruby & Williams* (by *James P. Cunningham)* for intervening defendant Roger A. Appleyard.

PER CURIAM. The legal issue presented to us in this case is simple: does the circuit court have subject-matter jurisdiction over a biological father's Paternity Act[1] request for an order of filiation declaring his paternity, when the biological mother and father have entered into a "surrogate parenting" agreement. The trial court and the Court of Appeals held that the circuit court lacked jurisdiction because this action is beyond the scope and purpose of The Paternity Act. The trial court granted a motion for accelerated judgment filed by the intervening defendant Attorney General. GCR

---

[1] 1956 PA 205, MCL 722.711 *et seq.;* MSA 25.491 *et seq.*

1963, 116.1(2). A divided Court of Appeals panel affirmed. *Syrkowski v Appleyard,* 122 Mich App 506; 333 NW2d 90 (1983). We reverse and remand for further proceedings.

## I

Plaintiff George Syrkowski is married, but that marriage has not produced any children.[2] Defendant Corinne Appleyard is married to intervening defendant Roger A. Appleyard. That marriage has produced two children.

On November 23, 1981, Mrs. Appleyard gave birth to her third child, Teresa Mary Syrkowski. All parties assume that this third child was conceived when Mrs. Appleyard was artificially inseminated with the plaintiff's semen on March 23, 24, and 25, 1981. She agreed to bear the plaintiff's child in return for his promise to pay her $10,000 over and above all medical and confinement expenses. For purposes of complying with existing law, Roger Appleyard signed an affidavit of non-consent to the artificial insemination on April 22, 1981. The plaintiff and his wife have physical custody of the child. The Appleyards have consistently cooperated with his efforts to obtain a court order acknowledging his paternity.

## II

This litigation began five months before Teresa Syrkowski's birth. Plaintiff's complaint relied on The Paternity Act, particularly subsections 4(b) and (f):

"(b) Proceedings in pursuance of this act may be instituted during the pregnancy of the mother * * *.

---

[2] Our recitation of the facts includes information that is not, strictly speaking, a part of the trial court record.

"(f) The father or putative father of a child so born out of wedlock may file the complaint in the circuit court of the county in which such child or mother resides or is found, praying for the entry of the order of filiation as provided for in subsection (a) of section 7. The other parent of the child shall be made a party defendant * * *. The court, following the hearing, shall enter the order of filiation which shall have the same effect, be subject to the same provisions and enforced in the same manner as an order of filiation would be if entered on complaint of the mother." MCL 722.714; MSA 25.494.

The plaintiff further asked that he be named as father on Teresa's birth certificate:

"If the paternity of a child is determined by a court of competent jurisdiction, the name of the father shall be entered on the certificate of birth pursuant to the finding and order of the court. The surname of the child shall be entered on the certificate of birth pursuant to the designation of the child's mother." MCL 333.2824(4); MSA 14.15(2824)(4).

The defendant answered the complaint by admitting all the plaintiff's allegations and joining his request for relief. The parties then jointly submitted a proposed consent order of filiation.[3]

At this point, the Attorney General sought and received permission to intervene. He then moved for accelerated judgment pursuant to GCR 1963, 116.1(2), alleging that the circuit court lacked subject-matter jurisdiction. The Attorney General argued that the court had jurisdiction only over

---

[3] The plaintiff also filed a notice of intent to claim paternity pursuant to MCL 710.33; MSA 27.3178(555.33). That statute is part of the Michigan Adoption Code, 1974 PA 296, MCL 710.21 et seq.; MSA 27.3178(555.21) et seq. It provides that filing the notice creates a rebuttable presumption of paternity in an action brought under The Paternity Act.

actions involving a "child born out of wedlock,"[4] and that Teresa Syrkowski is not a child born out of wedlock since at least two statutes establish the presumption that a child born to an artificially inseminated married woman is treated for all purposes as her husband's child. The first section appears in the Public Health Code, 1978 PA 368, MCL 333.1101 *et seq.;* MSA 14.15(1101) *et seq.:*

"A child born to a married woman as the result of artificial insemination, *with consent of her husband,* is considered to be the legitimate child of the husband and wife." MCL 333.2824(6); MSA 14.15(2824)(6). (Emphasis added.)

Like subsection (4) cited by the plaintiff in his complaint, this subsection contains instructions about the information to be entered on a birth certificate. The Attorney General also relied on part of the Revised Probate Code, 1978 PA 642, MCL 700.1 *et seq.;* MSA 27.5001 *et seq.:*

"If a child is born or conceived during a marriage, both spouses are presumed to be the natural parents of the child for all purposes of intestate succession. A child conceived following artificial insemination of a married woman *with the consent of her husband* shall be considered as their child for all purposes of intestate succession. Consent of the husband is presumed unless the contrary is shown by clear and convincing evidence." MCL 700.111(2); MSA 27.5111(2). (Emphasis added.)

Both statutes cited by the Attorney General make the husband's consent to the artificial insemination a prerequisite to application of the presumption. In other words, it is a rebuttable presumption. The Attorney General's intervention in

---

[4] See MCL 722.711(a); MSA 25.491(a).

this case prompted Mr. Appleyard's appearance as an additional intervening defendant. His affidavit of non-consent to the artificial insemination was filed at this time.

The trial judge granted the Attorney General's motion for accelerated judgment. The judge did not rely on the two statutes cited in the motion because he concluded that the presumption of the husband's paternity was at most a rebuttable presumption. Instead, the judge ruled that the plaintiff's requested relief was beyond the scope of The Paternity Act.

Judge Gribbs reasoned that, because The Paternity Act is silent in regard to these specific types of parenting arrangements, it was necessary to look beyond the words of the statute to the intent of the Legislature at the time of enactment. After reviewing the legislative history and the circumstances existing in 1956, he concluded that the Legislature had not intended The Paternity Act to be applied to the situation presented. He read the act as having the limited purpose of securing financial support for children born out of wedlock. He declined to give the act a broader interpretation in this case, because to do so would sanction surrogate parenting arrangements, which Judge Gribbs viewed as being contrary to public policy, citing *Doe v Attorney General,* 106 Mich App 169; 307 NW2d 438 (1981), *lv den* 414 Mich 875 (1982), *cert den* 459 US 1183 (1983).

The plaintiff and Mrs. Appleyard filed a joint appeal, but the Court of Appeals affirmed.[5] That Court declined to decide whether surrogate parenting arrangements are contrary to public policy. However, it agreed with the trial judge's ruling that The Paternity Act was designed only for the "pur-

_____

[5] Assigned Judge MAHINSKE dissented.

pose of providing support for children born out of wedlock." It noted that no amendment had altered the intent of the act, and it found that the original purpose "does not encompass the monetary transaction proposed in this case." 122 Mich App 514, 515.

## III

In this suit, plaintiff seeks only an order of filiation formally stating something that no one seriously disputes, *viz.,* that the plaintiff is the biological father of Teresa Syrkowski.[6] We express no opinion about the plaintiff's entitlement to any other relief in the future. However, we agree with his contention that the trial court does have subject-matter jurisdiction in the present case.

In *Winsett v Donaldson,* 69 Mich App 36; 244 NW2d 355 (1976), the Court of Appeals held that the circuit court lacked jurisdiction to hear an unmarried man's paternity act claim that he was the father of a child born to a married woman. The Court reached that conclusion because the act's definition of "child born out of wedlock" formerly limited that definition to children born to unmarried women. That definition has now been changed. Its present text appears below:

" 'Child born out of wedlock' means a child begotten and born to a woman who was not married from the conception to the date of birth of the child, *or a child which the court has determined to be a child born during the marriage but not the issue of that marriage."* MCL 722.711(a); MSA 25.491(a). (Emphasis added.)

---

[6] The plaintiff acknowledges that if he obtains the order of filiation, he will use that order to seek other relief including registration of his name on the birth certificate and a formal custody award. As regards custody, see MCL 722.720; MSA 25.500 and the Child Custody Act of 1970, 1970 PA 91, MCL 722.21 *et seq.;* MSA 25.312(1) *et seq.*

The change may have been prompted by *Smith v Robbins,* 91 Mich App 284; 283 NW2d 725 (1979), *lv den* 408 Mich 853 (1980), which warned of equal protection problems in the *Winsett* interpretation of the statute.[7] See also *Serafin v Serafin,* 401 Mich 629; 258 NW2d 461 (1977), which discarded Lord Mansfield's rule.

The plaintiff is prepared to prove that Teresa Syrkowski is a child born out of wedlock as defined by The Paternity Act. That will bring the child within the provisions of the act.

One part of the plaintiff's proofs will also establish that he is Teresa's biological father. The act makes the parents of a child born out of wedlock liable for the child's support and education. MCL 722.712; MSA 25.492. The lower courts held that imposition of liability for child support is the act's sole purpose. We can accept their assumption that the Legislature was primarily motivated by a desire to provide adequate support for children born out of wedlock. However, the support obligation cannot be enforced without a preliminary determination of paternity. Both the plaintiff and the defendant seek that determination. We hold that the circuit court does have jurisdiction to make it.

Section 4 of the act authorizes the mother, the father, or the Department of Social Services to file a complaint alleging paternity and requesting an order of filiation. The same section confers jurisdiction upon the circuit court:

"(c) The complaint shall be made to, and for the purpose of this act jurisdiction is conferred upon the circuit court . . . ." MCL 722.714(c); MSA 25.494(c).

---

[7] *Smith* avoided the problems by interpreting "unmarried" to mean "out of wedlock" and reasoning that the "out-of-wedlock" status must be determined by examining the parents' relationship, not the relationship of the mother to her husband.

That language is as clear as statutory language can be. There is no need to interpret or look beyond the words of the statute to the intent of the Legislature. *In re Certified Questions, Karl v Bryant Air Conditioning Co,* 416 Mich 558, 587; 331 NW2d 456 (1982). The circuit court has subject-matter jurisdiction over an action to identify the father of a child born out of wedlock. Any other conclusion requires an impossibly restrictive and unnecessary interpretation of the statutory language.

The plaintiff seeks only a paternity act determination that he is the biological father of Teresa Syrkowski. The act was created as a procedural vehicle for determining the paternity of children "born out of wedlock," and enforcing the resulting support obligation. The plaintiff is requesting the Court to determine the status of the child and his biological paternity. The act allows fathers to seek and receive such determinations. We hold that the circuit court does have subject-matter jurisdiction.

## IV

Pursuant to GCR 1963, 853.2(4), in lieu of granting leave to appeal, we reverse the Court of Appeals judgment and remand the case to Wayne Circuit Court for further proceedings consistent with this opinion.

WILLIAMS, C.J., and LEVIN, RYAN, BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred.

RILEY, J., took no part in the decision of this case.