# Order

**Michigan Supreme Court**
**Lansing, Michigan**

May 6, 2011

142333

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra,
Justices

MARK EDWARD SNAY,
        Plaintiff-Appellant,

v

DESTINY ROSE VEST,
        Defendant-Appellee.

SC: 142333
COA: 293618
Lapeer CC: 09-041541-DP

_____/

On order of the Court, the application for leave to appeal the November 18, 2010 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

MARILYN KELLY, J. (*concurring*).

I concur in the Court's order denying plaintiff's application for leave to appeal. I write separately because I strongly disagree with the overly rigid standing threshold in the Paternity Act.[1] I urge the Legislature to reconsider the act and to confer standing on fathers who can definitively prove their paternity.

### BACKGROUND

Defendant Destiny Vest was married to Harold Vest at the time of the conception and birth of the child who is the subject of this appeal. However, it is undisputed that plaintiff is the child's biological father. Plaintiff filed a complaint seeking sole physical custody of the child and joint legal custody with defendant. Plaintiff alleged that it was in the best interests of the child that he have physical custody.

The circuit court initially entered an ex parte order awarding joint legal custody to the parties and sole physical custody to plaintiff. However, after a hearing, the court

---

[1] MCL 722.711 *et seq.*

granted defendant's motion for summary disposition and dismissed the case, concluding that plaintiff lacked standing under the Paternity Act.

Plaintiff appealed, and the Court of Appeals affirmed the decision. It agreed that plaintiff lacked standing to seek custody of the child, but urged this Court to "revisit this issue in the context of this case."[2] Plaintiff then sought leave to appeal in this Court.

## THE NEED FOR CHANGE

Plaintiff argues that he has standing to seek custody because he has been determined to be the biological father of the child. I recognize that the Paternity Act does not confer standing on a father or putative father unless the child satisfies the statutory definition of "born out of wedlock."[3] I further recognize that the child in this case does not meet that definition because defendant was married to Harold Vest at the time of the conception and birth of the child. But I question the wisdom of refusing to allow a proven biological father standing to adjudicate his rights with respect to his child.

In his dissent in *Girard v Wagenmaker*,[4] then-Chief Justice CAVANAGH noted the grave policy concerns resulting from the standing requirements in the Paternity Act. Rather than paraphrase his thoughtful concerns regarding the act, I adopt his analysis as my own:

> This brings me to the policy concerns implicated by this case . . . . The Wagenmakers contend that it would be profoundly undesirable to permit a putative father legal standing to bring a paternity claim against the wishes of the mother and her husband, where the mother and husband maintain an intact marriage and choose to treat the child as their own. At first glance, there might appear to be substantial force to this argument, which relies not only on the principle of protecting the sanctity of the family, but on the emotional and psychological well-being of the child involved. It must be conceded that a case like this one raises a painful moral dilemma. For several reasons, however, I believe this broad policy argument must fail.

---

[2] *Snay v Vest*, unpublished opinion per curiam of the Court of Appeals, issued November 18, 2010 (Docket No. 293618), p 1 n 1.

[3] MCL 722.711(a) defines "child born out of wedlock" as "a child begotten and born to a woman who was not married from the conception to the date of birth of the child, or a child that the court has determined to be a child born or conceived during a marriage but not the issue of that marriage."

[4] *Girard v Wagenmaker*, 437 Mich 231 (1991).

First, and perhaps most important given the precept of judicial restraint, a substantive policy question like this should be left to the Legislature. As I have demonstrated above, the only reasonable reading of the language of the Paternity Act, *as previously interpreted by this Court* [in *Syrkowski v Appleyard*, 420 Mich 367 (1985)], compels the conclusion that the Legislature has authorized a paternity action like that brought by Girard in this case. If, on the other hand, the statutory language does not permit this Court to avoid the moral and policy questions, I would conclude that the balance of interests weighs in favor of permitting Girard's claim. It is more than a little hypocritical to contend, as do the Wagenmakers, that denying standing to Girard is consistent with "the law's repugnance to adulterers." The biological mother in this kind of situation is certainly no less an "adulterer" than the biological father. It is surely a bit late to talk of preserving the "sanctity" of the marital family by the time a situation like the one alleged in this case has arisen.

There is still a more basic pragmatic issue. Denying putative fathers like Girard a *legal* forum in which to press their claims will not prevent such claims from being made, quite possibly at times and in a manner far less conducive to the psychological health and security of the child involved. The law, after all, cannot sweep reality under the rug. Instead of leaving such paternity disputes unresolved, to fester and rankle down through the years, would it not be more desirable to give the parties their day in court and settle the issue once and for all? If the concern is the possibility of malicious or unfounded lawsuits, appropriate sanctions already exist. Furthermore, the Wagenmakers' concern that the mechanics of the paternity inquiry would intrude unacceptably into their intimate marital privacy is unfounded given the ease and reliability of modern scientific paternity testing on the basis of blood samples.

\*\*\*

It cannot be emphasized too strongly that upholding Girard's standing to bring his paternity claim would not *in any way* endorse or prejudge his claim to provide support for the child, or his claim to custody or visitation rights. But to deny Girard *standing* to bring his claim at the very outset is inherently unjust. The fact that it might appear unlikely or improbable that a given putative father might ultimately succeed on the merits of his claim in no way justifies denying him his day in court to *make* that claim. I am unwilling to make the arbitrary assumption that *no* support, custody, or visitation claim by a putative father, regarding the child of a married woman, will *ever* have sufficient merit to justify recognizing

the standing of *any* such claimants. The merits of each case are most appropriately considered at the very court hearing which the putative father seeks. His minimal right to such a hearing—in elemental due process terms, "the opportunity to be heard 'at a meaningful time and in a meaningful manner'"—is the *only* issue before this Court in this case.

***

Taking the broadest view of the statutory scheme, it seems to me that there would be something oddly askew with a legal framework which recognized the standing of a husband seeking to *dis*claim paternity of his wife's child, yet refused standing to a man seeking to *claim* paternity of such a child. There is a sadly negative cast to the entire law of paternity. The focus is almost always on the recalcitrant father, forced unwillingly into supporting a child he refuses to acknowledge. It is rarely on the out-of-wedlock father who willingly shoulders his paternal responsibilities and voluntarily seeks to establish a relationship with his child. This undertow of social assumptions has affected the constitutional case law of the United States Supreme Court, which has shown a solicitous concern for the due process rights of the unwilling father threatened with involuntary liability for child support, while turning a remarkably cold shoulder to the due process claims of willing fathers who wish to maintain a relationship with their children. This Court, however, need not and should not interpret Michigan's Paternity Act in such a selective and negative manner.[5]

Perpetuation of a rigid standing rule in the face of conclusive evidence of paternity does not always serve the interests of children, putative parents, or the State of Michigan. As this Court stated in *Serafin v Serafin*:

"If the function of a court is to find the truth of a matter so that justice might be done, then a rule which absolutely excludes the best possible evidence of a matter in issue rather than allow it to be weighed by the trier of fact must necessarily lead to injustice. Further, when a court voluntarily blindfolds itself to what every citizen can see, the public must justifiably question the administration of law to just that extent."[6]

---

[5] *Id*. at 269-276 (citations and footnotes omitted).

[6] *Serafin v Serafin*, 401 Mich 629, 635-636 (1977), quoting *Davis v Davis*, 507 SW2d 841, 847 (Tex Civ App, 1974), rev'd on other grounds, 521 SW2d 603 (1975).

Given that the Court is bound by the definition of "born out of wedlock" in the Paternity Act, I concur in the Court's order denying plaintiff's application for leave to appeal. But I wish to point out the adverse policy consequences of the part of the Paternity Act involved here. It raises an unyielding barrier to fathers and putative fathers who seek to have their claims redressed by our courts. When a plaintiff, like Mr. Snay, has presented conclusive evidence of paternity, the legal system should not turn a blind eye to his claims.

CAVANAGH, J. I would grant leave to appeal for the reasons stated in my dissent in *Girard v Wagenmaker*, 437 Mich 231, 253-278 (1991) (CAVANAGH, J., dissenting).

HATHAWAY, J., would grant leave to appeal.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

May 6, 2011

Clerk

p0503