314 P.2d 350

H. William **NALDER**, Catherine Nalder, H. William Nalder, Jr., Plaintiffs and Respondents,

v.

**KELLOGG SALES COMPANY**, a corporation, Defendant and Appellant.

No. 8529. -

Supreme Court of Utah.

Aug. 16, 1957.

Ray, Quinney & Nebeker, Salt Lake City, for appellant.

Dan S. Bushnell, Wilford A. Beesley, Salt Lake City, for respondents.

HARDING, District Judge.

This is the second time this case has been before this court on appeal. The former opinion is reported in 4 Utah 2d 117, 288 P.2d 456.

The action is to recover damages which the plaintiffs claim occurred as a result of defendant's wrongful failure to release real and chattel mortgages. From an adverse verdict by a jury and judgment entered thereon, the defendant appeals.

During 1949 the defendant financed the plaintiffs' turkey raising operations, taking as security a real estate and a chattel mortgage. The plaintiffs suffered a loss that year and were unable to pay the defendant the full amount of the 1949 indebtedness. In August, 1950, the amount still owing for 1949 was determined and the plaintiffs were requested to and did execute a real estate mortgage to cover that deficit. In the meantime, the defendant was financing the plaintiffs' 1950 turkey crop and in that connection, as security, had taken another real estate mortgage and another chattel mortgage. In 1951 the defendant continued to finance the plaintiffs and took a chattel mortgage for that year.

The indebtedness for 1950 was paid that fall and the indebtedness for 1951 was fully paid in January, 1952, and a small balance was credited on the 1949 indebtedness, represented by the August, 1950, notes and mortgage. Until March 11, 1954, all the real and chattel mortgages, being three of each and totaling $107,401.92, were held of record, notwithstanding the plaintiffs owed the defendant only about $6,000 secured by the August, 1950, real estate mortgage. On March 11, 1954, the defendant released all the mortgages except

the one of August, 1950, which, concededly, was a valid and subsisting lien.

The defendant declined to finance the plaintiffs for 1952 and thereafter. The plaintiffs, while still claiming to operate as a partnership, sought to obtain financing as individuals from other sources. Their endeavors were only partially successful and they were forced to limit their turkey raising to relatively small flocks during 1952, 1953, 1954. They claim that their business was successful during the latter three years, and that had they been able to secure financing for all the turkeys they proposed and were prepared to handle, they would have made profits amounting to $56,268.82 in excess of what they did make. They allege that the financing would have been available for them but for the wrongful refusal of the defendants to release the first two real estate mortgages and the three chattel mortgages.

The defendant counterclaimed for the balance owing on the August, 1950, note and asked for a foreclosure of the mortgage.

The defendant assigns and argues eleven points to warrant a reversal of the judgment.

■ The first point is resolved by pointing out that the second trial was a completely new trial and did not restrict the plaintiffs to the matters shown in the first trial.

"An order directing a new trial has the effect of vacating the proceedings and leaving the case as though no trial had been had. The verdict and judgment are set aside, even though the order does not specifically mention either. The granting of the motion usually has the effect, ipso facto, of vacating the judgment. If a new trial has been directed in general terms, the order has the effect of granting a new trial as to all of the parties and reopening all of the issues in the cause." 39 Am.Jur. 201.

The matters discussed by defendant in points designated 2, 3, 6 and 7 concern disputed questions of fact which were properly submitted to the jury and resolved by its verdict.

Defendant's point 5 relates to the admission in evidence of certain exhibits.

■ In an attempt to prove the amount of damages, the plaintiffs offered in evidence and the court received Exhibits I-1, I-2, Q, R, and N-1 to 4. The defendant assigns this as error. Exhibits I-1 and I-2 were received upon stipulation of counsel. They purport to be copies of ledger sheets from the records of Lee Brown Processing Company. Exhibits Q and R are statements prepared by the same company purporting to show turkeys sold by plaintiffs to the company in 1952 and 1954 the amounts paid for the turkeys and the processing charges paid by plaintiffs in connection with the sales. Q and R were admitted

on the testimony of Nalder, Sr. that such statements showed the turkeys he sold and the processing charges therefor. There was no error in receiving Exhibits I–1, I–2, Q and R for the purpose indicated.

Exhibits N–1 to 4 show what it commonly called profit and loss statements, which purport to indicate the profit made by plaintiffs in 1952–53–54 on the limited number of turkeys raised and marketed during the respective years. Taking into consideration the profit per bird, there is projected the profit that would have been earned had plaintiffs been able to secure the financing required to raise and market the number of turkeys they proposed and were prepared to raise. This exhibit is potent evidence when properly prepared. It saves the court and jury considerable time and effort in compiling the figures and computing the income, expenses and the resulting profit, if any. This court heretofore approved the rule permitting such evidence in Sprague v. Boyles Bros. Drilling Co., 4 Utah 2d 344, at page 352, 294 P.2d 689, at page 694, reading:

"It has been held, and we believe the ruling to be a salutary and expedient one, that where original book entries, documents or other data are so numerous, complex, or cumbersome that they cannot be conveniently examined by the fact trier, or where it would materially aid the court and the parties in analyzing such material, that a competent person who has made such examination may present such evidence. This is subject to the limitation that the evidence must be shown to be developed from records, books or documents, the competency of which has been established, and the records must be available for examination by the opposing parties and the witness subject to cross-examination concerning such evidence."

Such being the rule, let us examine N–1 to 4. The testimony of Mr. Nalder, Sr. and Exhibits I–1 to 4, Q and R constitute the evidence supporting the items in N–1 to 4. N–1 is for the 1952 turkey crop. The items supported by the evidence are: Sales for $8,044.01, expenses for brooder, herder, processing, taxes, insurance, and depreciation. Items not supported by any evidence whatever are: Sales made to others than the processor, cost of poults and feed.

N–2 is for the 1953 turkey crop. The items shown in it that are verified are: Sales for $8,754.35, cost of poults, expenses for brooder, herder, taxes, insurance, and depreciation. The figure given for feed appears to be understated by about $1,000 according to Exhibit I–3. Sales made to others than the processor are not supported by any evidence. Considering N–2 in its most favorable aspects and correcting only the error on the feed bill, the profit per bird is only a small fraction of the amount claimed as profit.

N-3 is for the 1954 turkey crop. The items shown in it which are verified by the evidence are: Sales of $11,841.57, instead of $15,322.66 as shown, expenses for brooder, herder, taxes, insurance, and depreciation. The item for feed is a lump sum figure not identified in the evidence, unless we conclude that the item of $8,630.28 shown in red in Exhibit Q is for feed. Sales, if any, made to others than the processor are not supported at all, and the charge of $2,281.51 for processing, as shown by Exhibit Q, is not considered. N-3 is clearly erroneous and not supported or verified by the evidence. According to the items supported by the evidence, a substantial loss is shown in 1954.

N-4 is a summary of N-1 to 3.

The exhibit was not shown to have been prepared, nor was it presented by a person competent to do so who was subject to cross-examination; nor was it based on records or other data available for examination, other than the exhibits herein mentioned.

It is obvious that Exhibit N-1 to 4 should not have been admitted, and its consideration by the jury could not be other than prejudicial, requiring a reversal of the judgment. From the competent evidence admitted at the trial, there does not appear to have been any profit at all from the plaintiffs' turkey raising business for the period 1952-53-54.

We have considered the assignments of error claimed and argued by the defendant under points 4, 8 and 10 and find such assignments without merit.

The trial court failed to allow the defendant its costs for filing the record in the former appeal. This should be done. Since we have no statute specifically allowing as costs the premium paid for a supersedeas bond, the trial court properly disallowed that item. 14 Am.Jur. 36.

The cross appeal presents questions that should be answered in view of the fact that the order of this court will remand the case to the District Court for a new trial.

We reaffirm the rule stated in the former opinion regarding the penalties to be applied for wrongful failure to release mortgages. However, we also hold that a party is entitled to have considered the question as to whether the failure to release the real estate mortgages was in and of itself sufficient to cause the damages alleged and, if so, the penalty for such failure should be applied as provided by statute.

As to the allowance of attorney fees, we hold the better rule to be that where the makers of a past-due note providing for attorney fees on the amount found due sue the payee for damages and recover a judgment for a sum greater than the amount awarded to the payee on a counterclaim in the action, that no attorney

fees should be allowed on the counterclaim. See 41 A.L.R.2d 683, and Gilliland v. Rodriquez, 77 Ariz. 163, 268 P.2d 334.

The case is reversed and remanded for a new trial. Costs to appellant.

McDONOUGH, C. J., and CROCKETT and HENRIOD, JJ., concur.

WORTHEN, J., does not participate herein.

WADE, J., having disqualified himself, does not participate herein.