315 P.2d 862

Paul SUGAR and Harry Ulmer, d/b/a Sugar
& Ulmer, a copartnership, Plaintiffs
and Appellants,

v.

Harry B. MILLER, Defendant and
Respondent.

No. 8639.

Supreme Court of Utah.

Sept. 28, 1957.

Clyde & Mecham, Elliott Lee Pratt, Salt Lake City, for appellants.

Dan S. Bushnell, Salt Lake City, for respondent.

WORTHEN, Justice.

Plaintiffs and appellants sued defendant and respondent in the court below to recover $2,000 allegedly due on a promissory note on which plaintiffs and defendant had been co-makers. Defendant admitted liability on the note but counterclaimed in the amount of $2,468.80 for services rendered in printing certain materials for Deseret Uranium Company, a corporation, for which plaintiffs allegedly had promised to make payment. The case was tried to the court and resulted in a judgment for defendant on the counter-claim for $468.80 after allowance for the offset of the admitted liability.

The basic question involved in this appeal is whether or not there is sufficient evidence to support the finding of the trial court that plaintiffs employed defendant to print the offering circulars and stock certificates for Deseret Uranium Company and personally agreed to pay the charges of defendant for such services. Defendant claims an original oral promise to make such payment. Plaintiffs claim that any promise made by them is a collateral promise and falls within the provisions of the Statute of Frauds, 25–5–4, U.C.A.1953, which provides:

"In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof, is in writing subscribed by the party to be charged therewith:

\* \* \* \* \* \*

"(2) Every promise to answer for the debt, default or miscarriage of another."

The question therefore becomes whether or not plaintiffs promised to answer for another's debt or whether they had themselves created the debt and were the principal obligors thereon.

The evidence reviewed in the light most favorable to defendant discloses that Paul Sugar, acting in partnership capacity, was an organizer and promoter of Deseret Uranium Company. He had more than an incidental interest in its organization and as a matter of fact he had more financial interest in the successful organization and underwriting of the company than had its officers. Defendant Miller is the proprietor and owner of a printing establishment in Salt Lake City. Sugar and Miller had been friends for many years. Sugar came to Miller and requested that Miller print the offering circulars and stock certificates for Deseret Uranium Company, promising Miller that he would make some money on the deal.

Before any work was undertaken and at the initial contact concerning the printing, Miller testified that he told Sugar he would not undertake the printing for the corporation in the following words:

" 'Now, Paul, I want to make one thing clear. I have had bad experience with corporations. I have got to have someone who will personally guarantee this bill.' He (Sugar) said, 'Harry, I will personally see that it is paid. You don't have to worry about the money.' I said, 'Paul, you and I have done business for years. We have been friends for years. Your word is good enough for me.' "

Before any printing was done another conversation took place in Sugar's office testified to by defendant Miller as follows:

"I said, 'Now, Paul, listen. I want to make one thing clear to you, Paul, so we don't get off on the wrong foot. Paper costs me a lot of money and my labor is very expensive. We have got a union shop and our margin of profit in this stuff is very, very small and I can't afford to speculate or buy any stock, or anything of that order. I must know who is going to pay me, who is personally responsible for this bill, so I'm going to get my money,' and I repeated the same conversation. He said, 'Now, Harry, we went over this before. You don't have to worry about it. I will personally see that you get paid. Now let's stop talking about it.' "

Miller also stated that if Sugar had asked him to look to the proceeds of the corporate underwriting for his payment, he would have refused to print the certificates and circular. The record shows, however, that Miller kept his account receivable on this account titled, "Deseret Uranium Co. c/o Sugar & Ulmer." Statements on the account entitled in that manner were sent to the offices of Sugar & Ulmer.

After the certificates and circulars had been printed, and were unpaid by either Sugar & Ulmer or by the corporation,

Miller became rather short of cash to meet current payrolls. He approached Sugar several times and demanded payment. Sugar responded that he would pay if he had the money, but he didn't have it. After one of these demands Miller stated that Sugar could use his credit and procure the money, whereupon Miller and plaintiffs co-signed on a note at plaintiffs' bank on plaintiffs' credit in the face amount of $2,000, which note is the subject matter of plaintiffs' complaint in this action. The proceeds of this note were given to Miller, and the note was later repaid by plaintiffs to the bank. Miller did not record the $2,000 on his books as a credit against the account of "Deseret Uranium Co. c/o Sugar & Ulmer" but he testified this was a matter of courtesy to Sugar, so that Sugar could handle the transaction with the uranium company in any manner in which he saw fit.

■ The question is then whether or not there was sufficient evidence that the trial court could reasonably find an original promise by plaintiffs to pay for the printing. In determining whether or not there is an original promise or a collateral promise under a given set of facts, the intention of the parties governs. This intention is to be ascertained from the words of the promise, the situation of the parties and all the circumstances surrounding the transaction.

"* * * Whether a promise is original or collateral, before there is any delivery of materials or services by a creditor, may ordinarily be determined by this test: Did the parties understand that the seller was extending credit for the materials or labor on the credit of the party sought to be charged, or to him only as a guarantor of payment should another fail to pay?" [1]

■ This question of intention is in most cases a question of fact for determination by the fact-finder, either jury or trial court, unless the relationship is so clear from the language used, the situation of the parties and the surrounding circumstances that there can be no reasonable dispute concerning it.[2]

■ In this case the trial court having found the facts in favor of the defendant and having determined that this agreement by the plaintiffs to pay for the printing was an original promise, we are obliged to review the evidence and every inference and intendment fairly arising therefrom in the light most favorable to the defendant.[3]

■ The testimony of Mr. Miller was such that, if believed, the trial court could reasonably find from the nature of the

1. Eilertsen v. Weber, 198 Or. 1, 255 P.2d 150, 155.

2. See Annotation 20 A.L.R.2d 246, wherein different expressions of words of the promise are discussed, including use of the word "guarantee" in the promise.

3. Buehner Block Co. v. Glezos, 6 Utah 2d 226, 310 P.2d 517.

transaction and the circumstances of the parties that Miller performed the services solely upon the credit of the plaintiffs and not upon the credit of the corporation, and therefore plaintiffs' promise to pay was an original one and not within the Statute of Frauds.

The language of Liebman v. Buell Lumber & Mfg. Co.,[4] in speaking of the sufficiency of the evidence in a case of this nature is particularly applicable to this case:

"The evidence sufficiently shows that prior to the sale and delivery of the goods defendant in error refused to extend credit and to sell and deliver the goods to defendant corporation until Mr. Liebman in person agreed to pay for the goods. It matters little what the particular words were as long as they show the intention of the parties, and that they understood each other, the one to be bound for the payment of the goods, and the other selling and delivering the goods on the faith of that promise. (Citing cases.)

"Where goods are furnished to one person upon the credit and request of another, it is an original undertaking upon the part of the person making the request, and is not within the scope of the statute of frauds. (Citing cases.)

"The law is well settled that a seller of goods may recover from another person on his oral promise to pay, though both title and possession of the goods were delivered to a person other than the one making the promise to pay, where the promise was given prior to the delivery and induced the seller to part with the goods."

The contention of appellant that he was entitled to attorney's fees on the note is disposed of by the decision of this court in Nalder v. Kellogg Sales Co.,[5] a holding to the effect that a litigant is not entitled to a judgment for attorney's fees when the adverse party has an offset that is greater than the amount due under the instrument calling for attorney's fees.

The judgment of the trial court is affirmed. Costs to respondent.

McDONOUGH, C. J., and CROCKETT, WADE and HENRIOD, JJ., concur.

4. Tex.Civ.App., 67 S.W.2d 1043, 1044.

5. 6 Utah 2d 367, 314 P.2d 350.