AUTOMOTIVE MANUFACTURERS WAREHOUSE, INC., a Utah Corporation, Plaintiff and Respondent,

v.

SERVICE AUTO PARTS, INC., a Utah Corporation and William E. Peffer and Sharon A. Peffer, Defendants and Appellants.

No. 15995.

Supreme Court of Utah.

June 8, 1979.

David S. Cook, Bountiful, for defendants and appellants.

Joseph L. Henriod and Stephen L. Henriod, Salt Lake City, for plaintiff and respondent.

HALL, Justice:

Appeal from a summary judgment which ruled that the individual defendants (hereinafter "Peffer") were personally liable for an open account of the corporate defendant Service Auto Parts (hereinafter "Service").

Service is a corporation which dealt in automobile parts. For several years plaintiff had supplied Service with much of its merchandise on an open account. In 1972 the account had reached the sum of approximately $18,000. On December 15, 1972, plaintiff indicated that it would continue to supply Service with automotive parts and equipment only on the condition that Service and Peffer execute four instruments: a promissory note, a security agreement, a financing statement, and a loan disclosure statement, (only the first two of which are pertinent to this appeal). Although none of the originals are in the record, the parties agree that the documents read, in pertinent part, as follows:

### PROMISSORY NOTE (Interest)

December 15, 1972

The undersigned, jointly and severally, promise to pay to the order of AUTOMOTIVE MANUFACTURERS WAREHOUSE, INC. at 57 East 7th South, Salt Lake City, Utah, or at such other place as the holder hereof may designate in writing, the sum of EIGHTEEN THOUSAND DOLLARS ($18,000.00), payable as follows: $378.10 on or before February 10, 1973, and $378.10 on or before the 10th day of each succeeding month until the total principal and interest are paid in full, . . . .

This note is secured by a Security Agreement on Inventory and Equipment.

### SECURITY AGREEMENT

(Inventory and Equipment)

On this 15th day of December 1972, SERVICE AUTO PARTS, INC., a Utah corporation, WILLIAM E. PEFFER and SHARON A. PEFFER, his wife, Debtors, hereby agree with and grant to AUTOMOTIVE MANUFACTURERS WAREHOUSE, INC. a security interest in the following property:

1. All inventory of debtors now owned or hereafter acquired which is held for sale or lease or is held as raw materials, work in process, or materials in connection with Debtors' business;

2. The equipment identified in the list attached hereto, identified as Exhibit "A", which is attached hereto and made a part hereof;

and all additions and accessions thereto, herein collectively called the "Collateral," to secure all Debtors' present and future debts, obligations and liabilities of whatever nature to Secured Party (the "Obligations"), including the note executed by Debtors to Secured Party in the amount of $18,000.00 and Debtors' obligators hereunder.

\*　　\*　　\*　　\*　　\*　　\*

Each person signing this Agreement, other than Secured Party, is a Debtor; and the obligations of all Debtors are joint and several.

Both documents were signed by defendants in the following manner:

---

WILLIAM E. PEFFER

---

SHARON A. PEFFER
SERVICE AUTO PARTS, INC.
By ————————————————
　　　William E. Peffer, Its President

Between December 15, 1972, and July 1, 1977, defendants made all required pay-

ments on the promissory note, reducing the balance thereof to $2,671.34. Meanwhile, Service continued to charge on open account with plaintiff purchases of automotive parts and equipment which resulted in a balance due and owing in September, 1976 of an additional $13,185.08. At that time plaintiff filed a complaint against Service seeking judgment for open account purchases beginning in 1974 through August 31, 1976. In its answer, Service denied that the balance was correct, due to plaintiff's failure to give appropriate credit for returned merchandise and for interest charged on returns. On May 9, 1977, plaintiff filed an amended complaint against both Service and Peffer, alleging the existence of the security agreement of December 15, 1972. Plaintiff sought judgment on the open account, an order permitting foreclosure on the collateral and judgment against Peffer for any deficiency. Peffer answered, denying any personal obligation on the open account for purchases occurring after the execution of the security agreement and promissory note.

On June 29, 1977, a third party creditor of Service, which had theretofore secured a judgment, levied a writ of execution upon all assets of Service. The levying creditor was advised of plaintiff's security interest and arrangements were made to deliver the entire stock of goods and equipment to plaintiff. Plaintiff then resold most of the merchandise (allegedly at jobber price) for a total of $6,678.71. Defendants claim that they received no notice of any public or private sales of the collateral, and that it was sold at a fraction of its value.[1]

On January 20, 1976, plaintiff filed a motion for summary judgment. An affidavit signed by one of plaintiff's employees asserted that the amount due on the promissory note and open account was $9,472.49 plus interest from January 1, 1978. Plaintiff's counsel also filed an affidavit, claiming $2,800.00 was a reasonable attorney's fee for services rendered since September 1976.

On February 17, 1978, Peffer filed a motion for summary judgment seeking a dismissal of plaintiff's complaint. The motion was supported by memorandum and affidavit giving numerous reasons why Peffer should not be held personally liable for any deficiency judgment. On June 26, 1978, the trial court denied Peffer's motion for summary judgment and further ruled as follows:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Motion of the plaintiff for Summary Judgment against the defendants, Peffer, and each of them, is hereby granted; there appearing to the Court to be no genuine issue of material fact in that the documents signed by the parties were separate and apart from the signature of Mr. Peffer as President of Service Auto Parts, Inc., and appear to be signed by the individual defendants, Peffer.[2]

Thereafter judgment was rendered against Peffer, awarding plaintiff $9,501.89[3] "principal and interest to January 1, 1978," the further sum of $322.57 interest from January 1, 1978, the sum of $2,800.00 attorneys' fees and $32.00 court costs.

On appeal, Peffer argues alternatively that (a) as a matter of law, the security agreement creates no personal liability of Peffer for the open account of Service after December 15, 1972; and (b) if not, there remain disputed factual issues which must be resolved at trial. Plaintiff seeks not only an affirmance of the lower court's decision but also requests attorneys' fees on appeal.

---

1. Defendants claim the assets were valued at between $14,986.22 (actual jobber cost) and $27,579.92 (approximate retail value).

2. Obviously Peffer signed the documents individually and as president of Service. It would appear, however, that the trial court did not focus on the specific problem presented, i. e.,

the *effect* of Peffer having personally signed the security agreement.

3. Apparently consisting of $2,671.34 (on the note) plus $13,185.08 (on the open account) less $6,383.93 (amount received for the liquidated merchandise less handling charges) plus minimal interest on the note.

■ The narrow question we are called upon to answer is whether by cosigning a security agreement with provisions as indicated supra, one becomes a guarantor of the principal. We must therefore interpret the language of the documents drafted by plaintiff [4] and signed by the parties in 1972. Where the issue involved is solely one of law, as in the instant case, this Court is capable of determining the question as was the trial court and we are not bound by its conclusions.[5]

■ To be held liable for the open account purchases of Service (after the execution of the note of December 15, 1972), Peffer must have made an original or a collateral promise. In determining whether such a promise has been made, we have previously held as follows: [6]

> In determining whether or not there is an original promise or a collateral promise under a given set of facts, the intention of the parties governs. This intention is to be ascertained from the words of the promise, the situation of the parties and all the circumstances surrounding the transaction.

■ First we must therefore consider the language of the security agreement relied upon by plaintiff. The agreement appears to be an adapted form [7] not intended to create obligations beyond its normal commercial significance. Plaintiff is named as the "Secured Party" [8] and defendants were named as "Debtors." [9] The collateral was described as inventory (then owned or later acquired) and equipment of Debtors. Debtors' present and future debts, obligations and liabilities (including the note)

were *secured by the collateral not by Peffer's personal guarantee.* Peffer clearly incurred personal liability on the note by signing as individuals. By individually signing the security agreement which provided that "the obligations of all Debtors are joint and several," [10] the parties merely recognized that the obligation of Peffer and Service on the note was a then existing obligation which would be deemed "joint and several" in the enforcement of the security agreement. The further effect of individually signing the agreement is that any interest Peffer may have in the collateral which secured the agreement would be yielded up to be applied against the debt in the event of a default.[11]

■■ Had the parties wanted a guaranty agreement on the open account they should have either executed a separate document or at the very least they should have made explicit provisions therefor in the other documents. The law requires that promises to answer for the debt, default, or miscarriage of another be written.[12]

Plaintiff has cited no authority (nor have we independently been able to find any) which even suggests that typical recitals in an inventory security agreement should be treated as a guaranty or similar document used in obtaining the promise of one party to stand good for the obligations of another.

■ The other criterion in determining the intention of the parties [13] is to look at the attendant circumstances surrounding the transaction. In this case Peffer has never (either before or after 1972) pur-

---

4. That an ambiguity in a guaranty will generally be construed against the party who drafted it see 38 Am.Jur.2d, Guaranty, Sec. 71.

5. *Hartman v. Potter,* Utah, 596 P.2d 653 (No. 16004, decided June 1, 1979).

6. *Sugar v. Miller,* 6 Utah 2d 433, 315 P.2d 862 (1957).

7. This can be seen from the inconsistencies of the provisions that (a) debtors were not to sell the collateral; yet (b) the inventory was held for the purposes of sale.

8. U.C.A., 1953, 70A–9–105(i).

9. U.C.A., 1953, 70A–9–105(d).

10. As phrased, the reference is to *present* obligations.

11. See *Consolidated Wagon & Machine Co. v. Kay,* 81 Utah 595, 21 P.2d 836 (1933).

12. U.C.A., 1953, 25–5–4(2). See also *Lester Piano Co. v. Romney,* 41 Utah 436, 126 P. 325 (1912).

13. See footnote 4, supra.

chased merchandise from plaintiff as an individual. Peffer was never individually billed and plaintiff never even contended Peffer was personally liable for anything beyond the payments required by the December 15, 1972, promissory note until the amended complaint was filed in 1977. The circumstances therefore are not indicative of the parties' intention to treat the security agreement as anything more.

■ Concluding as we do that Peffer is not personally liable for merchandise purchased on the open account after 1972, we must now decide whether plaintiff's resale of the collateral should properly apply to the open account or to the promissory note. At the time the inventory and equipment was turned over to plaintiff for resale, there remained a $2,671.34 balance on the 1972 note. Of the seven checks identified by plaintiff as payments against the indebtedness claimed, one (dated August 17, 1977) bears the following notation:

| | |
|---|---|
| Int. | 20.98 |
| Principal | 2,650.36 |
| | 2,671.34 |

Mdse: Returned by Service Auto
—Bountiful
Applied against Note Owing.

The check appears to be plaintiff's accounting entry, an instrument drawn on plaintiff's account, made to the order of plaintiff. The other checks bear the notation "Applied against Open Account." Plaintiff is bound by its decision to treat the promissory note as having been satisfied. The note having been satisfied, we need not reach the question Peffer raises as to inadequate notice of the resale.

The judgment should therefore be reversed and judgment entered in favor of Peffer. Costs to Peffer.

CROCKETT, C. J., and MAUGHAN, WILKINS and STEWART, JJ., concur.