STATE of Utah, Plaintiff and Appellee,

v.

Julie Warren VERDE, Defendant
and Appellant.

No. 20954.

Supreme Court of Utah.

Feb. 3, 1989.

Rehearing Denied March 10, 1989.

Robert Van Sciver, Margo L. James, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Earl F. Dorius, Salt Lake City, for plaintiff and appellee.

ZIMMERMAN, Justice:

Defendant Julie Verde appeals from her conviction, following a jury trial, of the offense of the sale of a child. *See* Utah Code Ann. § 76–7–203 (1978). She claims that certain evidence was improperly admitted, that the jury was improperly instructed, and that there was insufficient evidence on one element of the crime. We affirm.

We recite the facts from the record on appeal in the light most favorable to the jury's verdict. *Cf., e.g., State v. Booker*, 709 P.2d 342, 345 (Utah 1985); *Von Hake v. Thomas*, 705 P.2d 766, 769 (Utah 1985); *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985); *Sugar v. Miller*, 6 Utah 2d 433, 436, 315 P.2d 862, 864 (1957) (all addressing challenges to the sufficiency of the evidence). Verde met the State's chief witness, Tammy Watson, at the physician's office where Watson worked and Verde was being treated. After hearing that Watson had recently suffered a miscarriage, Verde approached her about the possibility of arranging for the private adoption of a third party's child. Verde and Watson continued discussing the proposed adoption on a regular basis from September of 1984 until February of 1985.

In these discussions, Verde indicated that Watson should expect to incur medical, legal, and other costs incident to the adoption ranging between $2,500 and $5,000. During this period, Watson arranged to pay $80 to $90 of Verde's medical care costs in return for Verde's commitment to give her a "discount" on the adoption expenses. Verde claimed that she was in the process of setting up a private adoption agency and was working with a local attorney. However, Verde presented no corroborating evi-

dence at trial to support this assertion. At first, Verde indicated to Watson that she knew of a pregnant woman who would be interested in giving up her baby for adoption at birth. Later, she began discussing a different woman, who she claimed was willing to give up her thirteen-month-old girl, "E."

In January of 1985, Verde was taking care of E, the daughter of a friend who was ill. Verde had told Watson that E was available for adoption and, on several occasions, had allowed Watson to keep E at her home for "trial periods" of up to seven days. When the adoption plans did not come to fruition as Watson had been led to expect, she became suspicious and contacted the police. Officers then arranged to listen to telephone conversations between Watson and Verde. During one conversation, Verde arranged to meet Watson on February 1, 1985, in a store parking lot and turn E over to her. On the appointed day, Verde took E from her mother, telling the mother an admittedly false story to the effect that she wanted to take E with her to an anti-abortion meeting. Verde then met Watson in the parking lot and, with police observing, placed E in Watson's care. The officers then stopped Verde and arrested her.

Verde was tried before a jury and convicted of the offense of sale of a child, a third degree felony. After a thirty-day evaluation at the state hospital, she was sentenced to three months in jail, fined $2,500, ordered to perform community service, and required to make restitution. Service of the sentence was stayed pending this appeal.

Before this Court, Verde claims error (i) in the admission of certain hearsay statements, (ii) in the admission of evidence regarding the preparations Watson had made for the adoption and the emotional impact the failure of the adoption plan had on Watson, and (iii) in the failure to instruct the jury that payment of certain legitimate fees is not a crime under the statute. Verde also argues that there was insufficient evidence to prove the element of consideration that is required by the statute. We consider these questions *seriatim*.

■ Verde's first claim is that certain hearsay statements were improperly admitted and that her attorney's failure to object to the admission of that testimony denied her the effective assistance of counsel. During the State's case, Watson's friends and co-workers were allowed to testify about statements that Watson had made to them during the period within which Verde and Watson were discussing an adoption. In these statements, Watson related details of the supposed adoption arrangements. The statements were introduced to corroborate Watson's testimony about the steps Verde took to convince Watson that an adoption was imminent. Verde's attorney did not object to the admission of these statements.

Ordinarily, the failure to raise an objection below would preclude our consideration of this argument on appeal. Utah R.Evid. 103(a)(1). However, Verde seeks to avoid the effect of her counsel's failure to preserve the objection by arguing that the failure operated to deny her the effective assistance of counsel guaranteed by the sixth and fourteenth amendments of the United States Constitution.[1]

As we recently observed in *State v. Lovell*, 758 P.2d 909, 913 (Utah 1988), a defendant who raises a claim of ineffective assistance of counsel must show both that his or her counsel rendered a deficient performance in some demonstrable manner and "that a reasonable probability exists that except for ineffective counsel, the result would have been different."[2] Because

1. Verde also cites article I, section 12 of the Utah Constitution. However, she makes no argument that the guarantees of the Utah Constitution are different in kind or degree from the federal constitutional provisions. Because she provides no separate authority or argument based on the Utah Constitution, we choose to

consider only her federal constitutional claims. *See State v. Lafferty*, 749 P.2d 1239, 1247 n. 5 (Utah 1988); *State v. Bingham*, 684 P.2d 43, 45 (Utah 1984).

2. In *State v. Moton*, 749 P.2d 639, 643 (Utah 1988), quoting from a per curiam opinion in *State v. Geary*, 707 P.2d 645, 646 (Utah 1985),

an ineffective assistance claim cannot succeed unless both required showings are made, we need not decide whether counsel's performance was defective if we conclude that the trial outcome was not prejudicially affected by the claimed error. *Strickland v. Washington,* 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984); *State v. Speer,* 750 P.2d 186, 190 (Utah 1988); *Lovell,* 758 P.2d at 913. Verde has not shown that absent the error, there is a reasonable probability of a more favorable result. She has merely asserted that her counsel's failure to object "was prejudicial to defendant's right to a fair trial" without explaining how the error was prejudicial. Our review of the record indicates that the testimony complained of was merely cumulative of other evidence that Verde has not challenged.[3] Accordingly, her claim of ineffective assistance of counsel is rejected.

■ Verde next claims that the trial court should not have admitted evidence of the extensive preparations Watson made to receive the child into her home and of the emotional impact that the bogus adoption plan had on her. Both Watson and her mother testified that Watson had purchased toys, furniture, and clothing in anticipation of the adoption. Several of these items were admitted into evidence. Verde's counsel did not object to the testimony or to the exhibits. A friend of Watson's testified that Watson was emotionally distraught after realizing that she would not be able to adopt E. Again Verde's counsel did not object. However, Verde's counsel did object unsuccessfully to testimony from Watson's employer that after the falsity of the adoption plan was revealed, Watson became so emotionally distraught that she attempted suicide.

Verde now argues that all of this evidence was so lacking in relevance and so unfairly prejudicial that it should have been excluded under Utah Rule of Evidence 403, which provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." Utah R.Evid. 403. Verde contends that the evidence of Watson's preparations for the child's arrival and her response to the failure of the adoption plan was only marginally probative of the elements of the crime charged and was highly prejudicial. She contends that the jury was unfairly swayed by Watson's crying on the stand when testifying about purchasing items for the child and by the testimony that Watson was so upset she attempted suicide. Verde argues that the trial court abused its discretion under rule 403 in admitting the evidence that was objected to. As for the evidence to which her trial counsel did not object, she claims that that failure to object denied her the effective assistance of counsel.

The State counters that whatever potential for unfair prejudice this evidence may

the second prong of the ineffective assistance test was phrased somewhat differently. In those cases, the standard was described as being whether there was a showing that the outcome "would probably have been different" absent counsel's defective performance. Because that choice of words might lead to some dispute as to the correct standard, we take this opportunity to eliminate any such confusion. The standard we apply today is the standard explained by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), and recently reiterated by this Court in *State v. Lovell,* 758 P.2d 909, 913 (Utah 1988). The second prong of the test for an ineffective-assistance-of-counsel claim under the federal constitution requires the claimant to "affirmatively show that a *reasonable probability exists* that except for ineffective counsel, the result would have been

different." *Id.* (emphasis added). The paraphrasing of that standard which found its way into *Geary* and *Moton* should not be taken as a modification of the *Strickland* test. Read literally, the "would probably have been different" language of those cases would be contrary to *Strickland,* where the Court considered and expressly rejected such a "preponderance of the evidence" test. "[A] defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." 466 U.S. at 693, 104 S.Ct. at 2068. For further explanation of how the *Strickland* test operates in practice, see *infra* note 15.

3. Verde has not raised the question of whether the admission of this testimony might be plain error under Utah Rule of Evidence 103(d). However, we do not find the alleged error to be sufficiently prejudicial to meet the plain error test discussed elsewhere in this opinion.

have had was outweighed by its probativeness. We think this is a close call, but we ultimately agree with the State. The evidence in question did help prove that Watson believed the adoption would occur. From this, the jury could infer that Verde did actually make the various statements about the adoption plan that Watson attributed to her. We recognize that the evidence had a tendency to sway the jury and to unfairly prejudice it against Verde. This is particularly true of the evidence that Watson tried to commit suicide. On balance, however, even if we might have excluded the evidence as an initial matter, we cannot say that the trial judge abused his discretion in concluding that the potential for unfair prejudice did not substantially outweigh the evidence's probative value. Therefore, it was not error to admit the evidence; it follows that Verde's counsel was not demonstrably ineffective by reason of his failure to object to the receipt of some of the evidence.

■ The next claim of error pertains to the jury instructions concerning the element of consideration. Under the sale-of-a-child statute, section 76–7–203 of the Code, one must have participated in the sale or attempted sale of a child "for and in consideration of the payment of money or for other thing of value." Utah Code Ann. § 76–7–203 (1978). The jury was instructed in just these terms. However, Verde contends that the trial court should also have instructed that the payment of legitimate legal fees and expenses incident to an adoption is permissible and these sums should not be taken into account in determining whether the requisite illegal consid-

eration was paid. She asserts that if such an instruction had been given, the jury would have found that all of the money Watson had paid or was to pay to Verde was for legitimate expenses and fees.

Verde's counsel did not offer such an instruction or object to the instructions actually given. Under Utah Rule of Criminal Procedure 19(c), we review an error in instructions when no objection was properly raised at trial only if we find that such review is necessary "to avoid a manifest injustice."[4] Verde argues that this standard is met here and that the trial court should have provided such an instruction *sua sponte.*

Our cases are not entirely clear as to the meaning to be given the term "manifest injustice." And determining what constitutes "manifest injustice" for purposes of rule 19(c) requires reference to a larger question—the proper standards to be applied in reviewing various types of claims of prejudicial error. Although we need not survey those standards in depth here, a brief review will be helpful in giving meaning to the term "manifest injustice."

■ A review of Utah cases reveals a rather simple set of categories and concepts. Errors we label "harmless" are errors which, although properly preserved below and presented on appeal, are sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings. *See, e.g., State v. Knight,* 734 P.2d 913, 919 (Utah 1987); Utah R.Crim.P. 30(a);[5] Utah R.Evid. 103(a);[6] Utah R.Civ. P. 61.[7]

---

**4.** Rule 19 of the Utah Rules of Criminal Procedure, which governs the use of jury instructions, provides in relevant part:

> (c) No party may assign as error any portion of the charge or omission therefrom unless he [or she] objects thereto before the jury is instructed, stating distinctly the matter to which he [or she] objects and the ground of his [or her] objection. Notwithstanding a party's failure to object, error may be assigned to instructions in order to avoid a *manifest injustice.*

Utah R.Crim.P. 19(c) (emphasis added) (codified at Utah Code Ann. § 77–35–19 (1982)).

**5.** "Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded." Utah R.Crim.P. 30(a) (codified at Utah Code Ann. § 77–35–30 (1982)).

**6.** Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and [a proper, timely objection was made]. Utah R.Evid. 103(a).

**7.** No error in either the admission or the exclusion of evidence, and no error or defect in any ruling or order or in anything done or

■ Errors which may, in fact, have been harmful but do not lead to reversal are errors that may have had a reasonable likelihood of affecting the outcome but were not properly preserved below and presented on appeal. *See, e.g., State v. Lovell,* 758 P.2d at 911; *State v. Speer,* 750 P.2d at 190 & n. 2; Utah R.Crim.P. 19(c); Utah R.Evid. 103(a); Utah R.Civ.P. 51. In such situations, we characterize the error as having been waived by the failure to object. *See, e.g., State v. Carter,* 707 P.2d 656, 660 (Utah 1985).

■ Errors that result in reversal fall into two categories. The first consists of errors which were properly preserved below and presented on appeal and which, when considered in context, are deemed harmful, i.e., there is a reasonable likelihood that the error affected the outcome in the trial court. *See* Utah R.Crim.P. 19(c), 30(a); Utah R.Evid. 103(a); Utah R.Civ.P.

51; *see, e.g., State v. Bell,* 770 P.2d 100 (Utah 1988); *State v. Knight,* 734 P.2d at 919–20; *State v. Cloud,* 722 P.2d 750, 754–55 (Utah 1986). The second category of errors that result in reversal consists of those we label "plain error." As we explained in *State v. Eldredge,* No. 20558, slip op. at 9–12 (Utah Feb. 1, 1989), these are errors that we deem harmful, and although they were not properly preserved below, they are raised on appeal and we conclude that their erroneous character should be deemed obvious.[8] *See* Utah R.Evid. 103(d);[9] Utah R.Crim.P. 19(c); Utah R.Civ.P. 51.[10]

■ The question presented by the instant case is how the standard of "manifest injustice," made applicable to instructional errors through rule 19(c) of the Utah Rules of Criminal Procedure, fits within those categories of error. What does the rule mean when it says that an instructional error not properly objected to may be considered on appeal "to avoid a manifest injustice"? We conclude that in most cir-

---

omitted by the court or by any of the parties, is ground for granting a new trial or otherwise disturbing a judgment or order, unless refusal to take such action appears to the Court inconsistent with substantial justice. The Court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.
Utah R.Civ.P. 61.

8. Although this brief review is not intended as a comprehensive survey of the law in this area, there are two additional points that bear mention. First, there are special rules applying to harmless error review in death penalty cases. *See State v. Tillman,* 750 P.2d 546, 553 (Utah 1987). Second, with respect to certain federal constitutional errors, we must place on the State the burden of proving that the error was harmless beyond a reasonable doubt. *See State v. Hackford,* 737 P.2d 200, 204 (Utah 1987). We have not previously and do not now address the question of what standard is applicable and where the burden of proof lies when claims of state constitutional error are raised. *See State v. Bell,* 770 P.2d at 101–103; *State v. Bishop,* 753 P.2d 439, 500 (Utah 1988) (Zimmerman, J., concurring, joined by Stewart, A.C.J., and Durham, J.); *Hackford,* 737 P.2d at n. 3.

9. "Nothing in this rule precludes taking notice of plain errors affecting substantial rights al-

though they were not brought to the attention of the court." Utah R.Evid. 103(d).

10. In considering our brief review of the concepts and categories of errors, a useful comparison may be made to the classification given various errors in the federal courts by Professor Charles Allan Wright, a prominent authority in the area of federal procedure. According to Wright,

(i) "Harmless error" is error that did not prejudice the defendant and, on appeal, is disregarded whether or not an objection was made at trial.

(ii) "Reversible error" is error to which an objection was raised and which meets the appropriate test for prejudicial effect.

(iii) "Plain error" is error to which no objection was raised, but which should have been obvious to the trial court and is sufficiently harmful to require reversal.

(iv) The allocation of the burden of proving and the standard for measuring prejudicial effect differ depending on the nature of the right affected. For an error involving certain federal constitutional rights, the government has the burden of proving that the error is harmless beyond a reasonable doubt. For nonconstitutional error, the accused must show that a substantial right was affected. *See* Wright, *Federal Practice and Procedure: Criminal 2d* §§ 851 to 856 (1982) [hereinafter Wright]; *see also* Fed.R. Crim.P. 52 (defining "harmless error" and "plain error").

cumstances, the term "manifest injustice" is synonymous with the "plain error" standard expressly provided in Utah Rule of Evidence 103(d) and elaborated upon in *Eldredge*, No. 20558. That conclusion is based on a comparison of the cases applying the two rules. *See, e.g., State v. Speer,* 750 P.2d at 190 & n. 2 (rules 103(d) & 19(c)); *State v. Medina,* 738 P.2d 1021, 1023 (Utah 1987) (rule 19(c)); *State v. Cloud,* 722 P.2d at 755 n. 4 (rule 19(c)).

Our conclusion is further strengthened by reference to the comparable federal rules. The federal equivalent of Utah's rule 19(c) is rule 30 of the Federal Rules of Criminal Procedure. It does not expressly provide a manifest injustice or plain error exception to the requirement that objections be made to preserve claims of instructional error. However, the federal courts have read federal rule 30 to incorporate a plain error rule. "Thus, even in the absence of a sufficient objection, [a federal] appellate court may reverse for plain error in the instructions." Wright, *Federal Practice and Procedure: Criminal 2d* § 484, at 709 (1982); *accord United States v. Thevis,* 665 F.2d 616, 645 (5th Cir.1982); Fed.R.Crim.P. 30, 52(a). And the plain error standard for instructional errors described by Wright is the same standard of plain error expressly included in Federal Rule of Evidence 103(d), from which Utah Rule of Evidence 103(d) is taken verbatim. *See* Utah R.Evid. 103 advisory committee's note. Thus, the federal courts review both evidentiary errors and instructional errors under the same standard, which they refer to as the "plain error" standard.

■ For the foregoing reasons, we conclude that when faced with a claim that a particular assertion of instructional error not raised at trial should be considered on appeal because failure to do so would result in manifest injustice under Utah Rule of Criminal Procedure 19(c), we will determine whether to review such a claim of error under the same standard we use when determining the presence of plain error under Utah Rule of Evidence 103(d). As explained in *Eldredge,* No. 20558, the plain error test of rule 103(d) is two-pronged. First, the error must be "plain" or "manifest." This is sometimes termed an "obviousness" requirement. After examining the record, an appellate court must be able to say "that it should have been obvious to a trial court that it was committing error."[11] *Id.* at 9. Second, the error must be of sufficient magnitude that it affects the substantial rights of a party. In other words, applying the standard we explained in *State v. Knight,* 734 P.2d at 919, the appellant must show a reasonable likelihood that absent the error, the outcome below would have been more favorable.[12]

We now apply those tests to Verde's claim. She argues that the trial court committed manifest error when it failed to instruct the jury that payment of legitimate legal and other fees cannot constitute the consideration which is an element of the offense. Section 76–7–203 of the

---

11. This "obviousness" prong of the plain error rule has been described in various terms, all of which amount to saying that from a review of the record, the appellate court is led to the conclusion that given the circumstances, the trial court should have been aware that an error was being committed at the time. *See, e.g., State v. Cobo,* 90 Utah 89, 102, 60 P.2d 952, 958–59 (1936) (plain error is "palpable error on the face of the record" or "manifest error"); *United States v. Granville,* 716 F.2d 819, 821 (11th Cir.1983) (plain error must be "obvious and substantial"); *United States v. Fowler,* 605 F.2d 181, 184 (5th Cir.1979) ("plain error is ... 'obvious' ..."), *cert. denied,* 445 U.S. 950, 100 S.Ct. 1599, 63 L.Ed.2d 785 (1980); *see generally* Wright, § 856.

12. This explanation of the test in terms of two elements that must be satisfied should not be taken to mean that the plain error and manifest injustice tests are in any respect precise or wooden. As we explained in *Eldredge,* No. 20558 at n. 11, determining the obviousness of an error and determining the severity of the resulting prejudice are not necessarily unrelated inquiries. In any given case, the degree of harmfulness may well affect the appellate court's judgment as to the obviousness of the error. At bottom, both the plain error and manifest injustice tests, no matter how stated, ultimately permit the appellate court to balance the need for procedural regularity with the demands of fairness. *Id.*

Code,[13] under which Verde was convicted, provided at that time:

Sale of a child—Any person, while having custody, care, control, or possession of any child, who sells, or disposes of, or attempts to sell or dispose of, any child for and in consideration of the payment of money or other thing of value is guilty of a felony of the third degree; *provided, however, this section shall not make it unlawful for any person, agency, or corporation to pay the actual and reasonable maternity, connected medical or hospital and necessary living expenses of the mother preceding and during confinement as an act of charity, so long as payment is not made for the purpose of inducing the mother, parent, or legal guardian to place the child for adoption, consent to the adoption, or cooperate in the completion of the adoption.*

Utah Code Ann. § 76–7–203 (1978) (emphasis added). Verde argues that the emphasized language of the statute creates an exception to the statute's proscription against the payment of consideration. She contends that the exception is so integral to a definition of the crime that the failure of the trial court to give an instruction regarding that exception *sua sponte* meets the rule 19(c) manifest injustice test we have outlined. We disagree. There is no need to determine whether the exception language in section 76–7–203 should have been worked into an instruction on the elements of the offense because Verde's claim does not satisfy the second prong of the manifest injustice test, i.e., Verde has not shown that the alleged error was harmful.

The purpose of the emphasized portion of the statute is to make it clear that payment as an "act of charity" of certain legitimate expenses of the birth mother incident to the birth of a child is not to be treated as the furnishing of consideration for the criminal sale of a child. In this case, the scheme involved a child who was thirteen months old when Verde offered to arrange the adoption; the child's mother testified that at the time of the planned adoption, there were no outstanding expenses related to the birth; and Verde did not offer any evidence that any monies she sought and received were to go for expenses incident to the birth. It follows that even if the instruction Verde argues for had been given, no reasonable juror could have found that the $2,500 to $5,000 in various fees and expenses that Verde had requested or the $80 to $90 for Verde's medical bills that Watson had paid were to have been applied to the mother's legitimate expenses relating to the child's birth. Therefore, we need not determine whether the failure to give the instruction was error at all, much less whether it was obvious error, because we are not convinced that absent any such error, "there was a reasonable likelihood of a result more favorable to the accused," i.e., our confidence in the verdict is not undermined. *State v. Bell,* 770 P.2d 100, 105 (Utah 1988); *State v. Knight,* 734 P.2d at 919–20.[14]

---

**13.** This is our first occasion to consider this statute. Without expressing an opinion as to its operation in a different context, we note that a similar provision has been considered in Michigan in a case involving a contract for surrogate motherhood. *See Doe v. Kelley,* 106 Mich.App. 169, 307 N.W.2d 438 (1981), *cert. denied,* 459 U.S. 1183, 103 S.Ct. 834, 74 L.Ed.2d 1027 (1983); *see also* Comment, *Artificial Insemination and the Law,* 1982 B.Y.U.L.Rev. 935, 950–52, 978–90 (discussing *Doe* and the sale-of-a-child implications of surrogate motherhood and other adoption arrangements).

**14.** Verde also contends that such an instruction was required by section 55–8a–1 of the Code. That section related to the governance of adoption practices. The portion on which Verde relies provided: "(4) *No provision of this chapter* precludes payment of fees for medical, legal, or other lawful services rendered in connection with the care of a mother, delivery and care of a child, or lawful adoption proceedings...." Utah Code Ann. § 55–8a–1 (1986) (emphasis added) (repealed and replaced by Utah Code Ann. § 62A–4–202(3)).

Verde claims that this provision creates an exception to criminal liability under the sale-of-a-child statute, section 76–7–203 of the Code. Her argument is specious. By its terms, section 55–8a–1(4) applies only to chapter 55–8a of the Code; it has no bearing on the proper construction of section 76–7–203.

In an alternative attempt to have us examine the claimed instructional error, Verde contends that her trial counsel's failure to offer such an instruction or object to the instructions actually given denied her the effective assistance of counsel. Under the *Strickland* standards explained above, Verde has the burden of showing a reasonable likelihood that the outcome of the trial would have been different if the additional instruction had been submitted. She has not met this burden. We have already concluded that giving the instruction would not have resulted in a more favorable outcome for Verde.[15]

Verde's final claim is that there was insufficient evidence to show that she was selling the child "for and in consideration of the payment of money or other thing of value," as the statute requires. The State argues that there is sufficient evidence to show that Verde had received certain consideration at the time of her arrest and that she anticipated receiving additional amounts from Watson.

In considering a claim of insufficiency of the evidence,

"we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury. We reverse a jury conviction for insufficient evidence only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he [or she] was convicted."

*State v. Booker*, 709 P.2d at 345 (quoting *State v. Petree*, 659 P.2d 443, 444 (Utah 1983)); *accord, e.g., State v. Cantu*, 750 P.2d 591, 593 (Utah 1988); *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985). There was ample evidence that Verde received approximately $90 worth of health care that was paid for by Watson in consideration of arranging the proposed adoption. There was also evidence that Verde asked for and received from Watson $5 for "gas money" on one of the occasions when Verde delivered the child to Watson for a visit. Finally, there was evidence that Verde had planned to extract more money from Watson as "legal" and "medical" fees. The statute makes unlawful both a completed sale of a child and an attempt to sell. Utah Code Ann. § 76-7-203 (1978). Therefore, it was not even necessary to show that Verde actually received the consideration, so long as there was sufficient evidence that she attempted to engage in a transaction which would have led to her receiving consideration. Reviewing the record in a light most favorable to the verdict, we conclude that there was ample evidence on the question of consideration.

We affirm the conviction.

---

**15.** As we explained earlier, the test for an ineffective-assistance-of-counsel claim under the federal constitution has two prongs. The first prong is that the lawyer's performance was deficient under the standard of "reasonably effective assistance." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To meet the second prong, an appellant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. This second prong is comparable to the standard that we apply as the harmless error standard of Utah Rule of Criminal Procedure 30(a) and Utah Rule of Civil Procedure 51, as the second prong of the plain error test of Utah Rule of Evidence 103(d), and as the second prong of the manifest error test of Utah Rule of Criminal Procedure 19(c). In short, a common standard is applicable to claims of error raised under any of these state law rules or under a claim of ineffective assistance of counsel under the federal constitution. *Compare Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068 *and State v. Archuleta*, 747 P.2d 1019 (Utah 1987) (ineffective assistance of counsel) *with State v. Bell*, 770 P.2d 100 (Utah 1988) (harmless error; Utah R.Crim.P. 30(a)), *State v. Eldredge*, No. 20558 (plain error; Utah R.Evid. 103(d)) *and* Utah R.Crim.P. 19(c). Therefore, Verde's failure to show sufficient prejudice to meet the second prong of the manifest injustice test of rule 19(c) means that she has also failed to meet the second prong of the test for ineffective assistance of counsel.

HOWE, Associate C.J., and DURHAM, J., concur.

HALL, C.J., and STEWART, J., concur in the result.