OPINION OF THE COURT
Guy P. De Phillips, J.
In this proceeding filed on June 11, 1992 pursuant to article 5 of the Family Court Act, the petitioners seek a declaration of maternity and paternity. Specifically petitioner Luz Elena A., seeks a determination by this court that she is the biological mother of the subject children (twins) born to the respondent Judith N. on May 29, 1992. Similarly petitioner, Andres A., seeks to have this court enter an order of filiation legally declaring him to be the biological father of the subject children born to Judith N. on May 29, 1992. The corespondent David N. is the husband of Judith N.
The facts of this case are uncontroverted. Each of the four parties has furnished the court with a signed affidavit attesting to the facts surrounding the birth of the subject children, Alexis and Andres. Additionally, the court elicited testimony from each of the parties and finds their testimony to be entirely credible. The court finds, based upon the affidavits and the testimony of the parties, the uncontroverted facts are as follows:
On October 3, 1991 petitioner Luz Elena A. underwent a medical procedure in which several of her ova (eggs) were surgically removed from her body by Dr. Geoffrey Sher of Greenbae, California. On October 3, 1991 the ova removed from Luz A. were fertilized by her husband Andres A.’s semen through a procedure commonly known as “in vitro” fertilization. This procedure was performed by Dr. Geoffrey Sher.
On October 5, 1991 the six ova resulting from the "in vitro” fertilization procedure performed on the petitioners were implanted into the uterus of respondent, Judith N., by Dr. Sher. Mr. and Mrs. N. testified and swore in their written affidavits submitted to the court that they did not engage in sexual intercourse during September through October 10th of 1991— the period of ova implantation. The court takes judicial notice of the written affidavit of Dr. Geoffrey Sher which confirms the in vitro fertilization procedure performed on the A.’s on October 3, 1991 which resulted in the implantation of the fertilized ova in the uterus of Judith N. The doctor opines that *67 Judith N. became pregnant as a result of the implantation procedure and is expected to deliver the biological children of Luz Elena and Andres A. on or about June 22, 1992. Respondent, Judith N., gave birth to Andres and Alexis on May 29, 1992. The children were released by the hospital to petitioners three days after their birth. The parties on their own without court intervention had signed various documents permitting the hospital to release the children to the petitioners. Since that day the children have remained in Florida with the petitioners.
By way of background, the respondent Judith N. contacted the Infertility Center of New York in 1989 when she and her husband had agreed to become involved in a surrogate parenting program to help couples who were unable to have their own children. The N.’s already have two biological children. The A.’s have no children. The parties entered into a surrogate agreement.
The court is aware of the recent legislative enactment contained in chapter 308 of the Laws of 1992 entitled "An act to amend the domestic relations law, in relation to making surrogate parenting contracts void and prohibiting payment or receipt of compensation in connection with such contracts.” This bill was signed into law on July 17, 1992 and shall take effect one year later. In the instant matter the court is confronted with the issue of whether Mr. A. is the biological father of the children and whether Mrs. A. is the biological mother. Accordingly, since the parties are all in agreement as to these issues the court does not have to rule on the legality of said surrogate contract.
The first issue facing the court is whether the Family Court may enter a filiation order declaring petitioner Andres A. the father of the subject children. Secondly, the court is confronted by the novel issue of whether the Family Court has jurisdiction over Luz Elena A.’s maternity proceeding seeking entry of a declaration of maternity.
The court reiterates that the matter before the court is uncontested. Both petitioners and respondents are in agreement that the petitioners are the biological parents of the children. Despite the uncontested nature of these proceedings the court directed blood testing of respondent Judith N., both petitioners and the two children. The court did not direct blood testing of respondent David N. because it concluded that if the tests resulted in excluding Judith N., his wife, then *68 logically David N. would also be excluded. The court’s rationale in ordering the HLA, blood grouping and DNA tests is as follows: Firstly, respondent Judith N. is married and there exists a strong legal presumption that any child born to a married woman is presumptively the legitimate issue of that marriage and accordingly the husband is the presumed legal father of such issue. However this presumption is rebuttable. Secondly, the court is confronted with determining whether respondent Judith N., or petitioner Luz Elena A. is biologically the mother of the subject children. In the past courts were safe in assuming that the woman who gave birth to a child was that child’s biological mother. However, today due to scientific advances in the area of in vitro fertilization the woman who gives life to a child through the birthing process and by providing the child with sustenance to grow while inside the womb may not in fact be the biological/genetic mother of that child.
The petitioners introduced into evidence the results of a human leucocyte antigen blood tissue test (hereinafter HLA test) and blood grouping test indicating that the respondent, Judith N., cannot be the biological mother of Andres or Alexis since she is excluded in the MNS and HLA genetic systems. In addition petitioners submitted to the court the results of a combined HLA, blood grouping and DNA analysis test indicating that petitioner Luz A. cannot be excluded as the biological mother of the child Alexis since they share genetic markers. The Roche Biomedical Laboratories using DNA analysis along with the HLA and blood grouping system concluded that the probability of maternity for Luz A. regarding the child Alexis was 99.31%. Utilizing the same procedure for the child Andres, Roche Biomedical Laboratories concluded that Luz A. could not be excluded as his biological mother since they share genetic markers. The laboratory concluded that the probability of maternity is 99.56%. As to petitioner, Andres A., Roche Biomedical Laboratories utilizing the same procedure as delineated above concluded that he could not be excluded as the biological father of the children Alexis or Andres since they share genetic markings. As a result of the DNA analysis combined with the HLA and blood grouping tests the probability of paternity as to the child Alexis is 99.66% and as to the child Andres is 94.21%.
The presumption of legitimacy although one of the strongest and most persuasive known to the law, is nevertheless subject to the sway of reason and is rebuttable (Matter of *69 Findlay, 253 NY 1, 7). In the present case, although it is uncontroverted that the respondent Judith N. was married and residing in the same home as her husband at the time of probable conception, competent evidence was adduced, through her own unimpeached testimony and that of her husband, of nonaccess. The court finds their testimony to be entirely credible. In addition, both the petitioners and the respondents testified that on October 5, 1991 six ova resulting from the in vitro fertilization procedure were implanted into the uterus of the respondent, Judith N. Moreover, the DNA test introduced into evidence is known to be highly accurate on the issue of filiation. In this case, the test results indicate that it was "highly probable” that the petitioner, Andres A., was the father of Andres and Alexis. Those results coupled with the uncontroverted testimony of the respondents as to their lack of sexual relations during the critical period, the testimony of petitioners and respondents as to the in vitro fertilization procedure and subsequent ova implantation during the time of probable conception established clearly and convincingly that the petitioner Andres A. is the father of the subject children. The court finds that whether a pregnancy occurs by virtue of sexual relations or artificial insemination in útero or in vitro fertilization, as in the instant case, does not affect Andres A.’s fundamental parental rights or the ability of this court to determine that he is the father of the subject children. (See, Syrkowski v Appleyard, 420 Mich 367, 362 NW2d 211 [1985]; Domestic Relations Law §73.) Accordingly, based on the aforementioned, the court pursuant to article 5 of the Family Court Act directs the entry of an order of filiation declaring the petitioner Andres A. the father of Alexis and Andres born on May 29, 1992.
The court next considers the issue of whether the Family Court has jurisdiction to determine Luz A.’s maternity action. The Family Court is a court of limited jurisdiction and must adhere to its statutorily enunciated powers. (Matter of Maria E. v Anthony E., 125 Misc 2d 933 [1984]; see, Pearson v Pearson, 118 Misc 2d 850 [1983], affd 108 AD2d 402 [2d Dept 1985], affd 69 NY2d 919 [1987]; Matter of Noel N, 120 Misc 2d 380 [1983]; Family Ct Act § 115.)
Family Court Act article 5 entitled "Paternity Proceedings” is the only article that provides for declaration of parenthood. Section 511 of the Family Court Act entitled "Jurisdiction” provides in pertinent part: "Except as otherwise provided the family court has exclusive original jurisdic *70 tion in proceedings to establish paternity.” The statute makes no provision for declarations of maternity. Petitioners argue that due to technological advances a woman may have ova (eggs) removed from her and fertilized by her husband and then implanted into another woman. They therefore conclude that the parental rights of the genetic mother cannot be ignored and must be afforded the same recognition given to the biological father. Although this is an articulable argument, it should be addressed to the State Legislature. The Legislature has seen fit to enact new laws on occasion to accommodate technological advances. For example, the Legislature enacted Domestic Relations Law § 73 entitled "Legitimacy of children born by artificial insemination”. Pursuant to that statute "[a]ny child born to a married woman by means of artificial insemination * * * with the consent in writing of the woman and her husband, shall be deemed the legitimate, natural child of the husband and his wife for all purposes.” Clearly the Legislature could have enacted similar legislation to protect the rights of biological parents involved in a fertilized ovum implantation procedure. It has not. The Legislature’s silence cannot be construed as an imprimatur to the courts to legislate. A court’s function is to construe a statute as written and not to legislate judicially what is not there in the original text.
Petitioners’ contention that article 5 is unconstitutional is without merit. Every statute is presumed to be constitutional, and every intendment is in favor of its validity. (Farrington v Pinckney, 1 NY2d 74 [1956]; see, National Psychological Assn. for Psychoanalysis, 18 Misc 2d 722 [1959].) A statute can be declared unconstitutional only when it can be shown beyond a reasonable doubt that it conflicts with fundamental law. (Matter of Fay, 291 NY 198 [1943].) This has not been shown. Article 5 was enacted to provide a process whereby an identifiable putative father would have filiation legally recognized. It is utilized by a woman or man who has a child out of wedlock and seeks to have a declaration of paternity made, usually with an order of support consequently entered. Due to the advance of modern science, a child may now be born with two mothers — a genetic mother who has supplied the ovum which has been fertilized and a birth mother who has supplied the womb and the nurturance required to carry the fertilized egg to term. A declaration of the rights of these respective mothers as to, inter alia, legal recognition of a parent-child relationship requires legislative implementation. As a result of *71 technological advances in the area of human reproduction children may now be conceived by means other than sexual intercourse. Specifically, today two methods of alternate reproduction exist: in vitro fertilization and artificial insemination. The Legislature has addressed the legitimacy of children conceived by artificial insemination. Domestic Relations Law § 73 condones and protects the use of artificial insemination as means of parenthood by providing a statutory framework for evaluating the legal rights of the respective parties. Since the medical procedure of "artificial insemination” raises the question of paternity as opposed to maternity, this legislative enactment is a supplement to article 5 paternity proceedings. When article 5 was enacted these alternate methods of human reproduction were nonexistent. Clearly the Legislature never contemplated the possibility of there being a question of maternity because the relationship between mother and child was biologically established by the birth of the child. As this premise is no longer true, a statutory enactment enunciating maternity may be warranted.
Although the court is not unsympathetic to the plight of the petitioner, Luz A., the court cannot legislate judicially what is not contained within the statute. Accordingly, for the aforementioned reasons petitioner Luz A.’s petitions for a declaration of maternity pursuant to docket Nos. P4266-67/92 are dismissed for lack of subject matter jurisdiction. The court notes that petitioner Luz A. is not without a remedy since she may seek to adopt the two children.
Petitioner Andres A.’s petitions for paternity pursuant to docket Nos. P4264-65/92 are granted to the extent of entering orders of filiation legally declaring him to be the father of Alexis and Andres.