Doe v New York City Bd. of Health (2004 NY Slip Op 24303)

Doe v New York City Bd. of Health

2004 NY Slip Op 24303 [5 Misc 3d 424]

August 19, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, December 1, 2004

[*1]
Dick Doe et al., Plaintiffs,
v
New York City Board of Health et al., Defendants.
Supreme Court, New York County, August 19, 2004

APPEARANCES OF COUNSEL

Rumbold & Seidelman, Yorktown Heights (Nina Rumbold of counsel), and Melissa Brisman, Park Ridge, New Jersey, for plaintiffs. Michael A. Cardozo, Corporation Counsel, New York City (Robin Binder of counsel), for defendants.

{**5 Misc 3d at 425} OPINION OF THE COURT

Jane S. Solomon, J.
This is an action for declaratory relief whereby the biological parents of newborn triplets, who were carried by a gestational surrogate, join with the gestational surrogate and her husband in seeking a judgment that the biological parents' names should appear on the children's birth certificates.
Dick Doe and Jane Doe are husband and wife, as are Dick Roe and Jane Roe. Mrs. Doe and Mrs. Roe are sisters. Mrs. Doe is unable to bear children because her uterus was removed as a result of cancer. Her sister agreed to the implantation in her uterus of embryos created from the sperm and ova of Mr. and Mrs. Doe. This is known as a "gestational surrogacy." No consideration, except love and affection, is involved. Three fetuses developed in Mrs. Roe's uterus, and Baby Girls A, B and C were born of her on August 17, 2004 at a New York City hospital.
Prior to the birth of the babies, plaintiffs had moved in this court for a preliminary injunction, pending the court's determination of parentage: (1) enjoining the hospital or its staff from reporting the births to the New York City Board of Health and the New York City Department of Health and Mental Hygiene (DOHMH) pursuant to section 201.03 of the New York City Health Code (24 RCNY); (2) compelling DOHMH to suspend issuance of certificates of birth for the triplets; and (3) compelling DOHMH to issue the birth certificates for the triplets in conformity with the court's determination of parentage. By decision placed on the record on August 16, 2004, and for reasons discussed more fully below, the court denied the plaintiffs' request for preliminary injunctive relief, except to the extent of enjoining the hospital and its staff from issuing a report of the births until the fifth business day following any birth to Mrs. Roe.
Plaintiffs now move, by order to show cause, for an order declaring that Mrs. Doe is the mother of Baby Girls A, B and C. In support of the present motion, plaintiffs have presented three documents entitled "Relinquishment of Parental Rights" sworn to by Mrs. Roe, the birth [*2]mother, reconfirming her position that she does not wish to assert any actual or potential rights she may have to the three children.
Plaintiffs' original complaint, filed on or about June 29, 2004, had sought a judgment declaring that the Does are the legal parents {**5 Misc 3d at 426}of the three children and enjoining the defendants from recording the birth mother and/or her husband as the parents on the children's respective birth certificates. Mrs. Roe's obstetrician and the hospital, originally named as defendants, stipulated to comply with any final order issued by the court. DOHMH answered the complaint on or about July 27, 2004. DOHMH opposed the grant of a prebirth order, arguing that it violates article 8 of the Domestic Relations Law, as that statute declares all surrogate parenting contracts void and unenforceable in New York State. DOHMH further argued that the hospital and its physicians are required to report to DOHMH the true medical facts surrounding a live birth, including the identity of the woman giving birth to a child, so that the medical records remain accurate and to prevent fraud or mistake in the determination of such matters as identity, citizenship, inheritance and insurance coverage.
In opposition to the present motion, DOHMH argues that it would not oppose the grant of postbirth relief amending the birth certificates to report the Does as the father and mother of the children, provided their identity as genetic parents is established to this court through DNA evidence, or they are named the legal parents of the children pursuant to a formal adoption proceeding.
On the motion for a prebirth order, this court ruled that the plaintiffs failed to show a likelihood of success. This was because the complaint itself recognizes that a surrogate parenting contract is prohibited and unenforceable in this state, even where no payment of funds is involved. (Domestic Relations Law art 8, §§ 121-124.) The Domestic Relations Law makes no distinction between gestational surrogacy contracts and traditional surrogacy arrangements, where the woman agrees to be inseminated with the sperm of a man and a pregnancy occurs with her own ovum. (Domestic Relations Law § 121.) Therefore, as plaintiffs acknowledged, "a birth mother who gives birth to a child pursuant to a surrogate parenting agreement, is vested with parental rights to that child and must surrender or consent to the adoption of the child in order for parental rights to be vested in the intended mother (See DRL § 124 and § 121 (4) (b))." (Complaint ¶ 38.)
Plaintiffs had contended that the Domestic Relations Law was not implicated because there was no dispute between the biological parents and the gestational carrier in this case. While this was and remains the case, there was the possibility of a change {**5 Misc 3d at 427}of heart on the part of Mrs. Roe after the birth of the babies. Therefore, plaintiffs' request for a prebirth order was, in effect, a termination of Mrs. Roe's parental rights prebirth, and the equivalent of making her subject to a binding agreement to surrender the child, contrary to New York law. (Accord A.H.W. v G.H.B., 339 NJ Super 495, 505, 772 A2d 948, 954 [Super Ct, Bergen County 2000].)
A second and independent reason for denying the requested relief was that the Family Court has "exclusive original jurisdiction" in proceedings to establish paternity. (Family Ct Act § 115 [a] [iii]; § 511.) Part of the plaintiffs' original request for relief was a declaration that Mr. Doe, the biological father, was a legal parent of the then fetuses. Since section 517 of the Family Court Act allows such a proceeding to be instituted "during the pregnancy of the mother," Mr. Doe was directed to apply forthwith to the Family Court for an order of paternity. (See, e.g., Matter of Andres A. v Judith N., 156 Misc 2d 65 [Fam Ct, Queens County 1992].) With such an order in [*3]hand, he would then be listed on the birth certificates and authorized to make postbirth medical decisions.
Plaintiffs correctly noted that the Family Court could not afford any relief to Mrs. Doe, the biological mother. (See, e.g., Matter of Andres A. v Judith N., 156 Misc 2d 65 [1992], supra.) The Family Court Act was written in 1962, before today's medical advancements which allow for two women to claim maternal rights to a baby, and is silent as to maternity. It follows, then, that the Supreme Court, as a court of "general original jurisdiction in law and equity" (NY Const, art VI, § 7 [a]), has the power to issue an "order of maternity." (Accord Arredondo v Nodelman, 163 Misc 2d 757 [Sup Ct, Queens County 1994].) Section 7 (b) of article VI of the New York Constitution provides that "[i]f the legislature shall create new classes of actions and proceedings, the supreme court shall have jurisdiction over such classes of actions or proceedings." Similarly, the Supreme Court has jurisdiction over a novel dispute where no statutory provision takes it away. Section 124 of the Domestic Relations Law specifically leaves open the type of legal proceeding that may be instituted following the birth of a child born pursuant to a surrogate parenting contract, and does not limit the parties to a formal adoption proceeding.
Turning to the issue of whether DNA evidence should be presented, plaintiffs have submitted an affidavit from a physician who practices in a fertility clinic that is associated with a major New {**5 Misc 3d at 428}York City hospital. He avers that a successful in vitro fertilization procedure was performed on Mrs. Doe with the sperm of her husband, Mr. Doe, and that the resulting viable human embryos were successfully implanted by him into the uterus of Mrs. Roe in January 2004. Mrs. Roe had been placed on drugs to render her unable to ovulate on her own on or near the date of the embryo transfer. The doctor concludes, based on his expert medical opinion, that Mr. and Mrs. Doe are the genetic parents of the triplets. This conclusion has not been challenged, and I am informed that the Family Court routinely issues orders of paternity without DNA evidence in cases where the identity of the father is not disputed by any interested party. Indeed, Mr. Doe obtained orders of filiation from the Family Court in one day without such data, and submitted them at the argument held on this motion. Under the circumstances, the court may determine maternity. Based upon the record here, Mrs. Doe has established to a reasonable degree of certainty that she is the genetic mother, and Mrs. Roe has established her relinquishment of parental rights such that Mrs. Doe is entitled to such a declaration from the court.
The final issue surrounds the issuance of initial birth certificates for the children. Section 17-166 (a) of the Administrative Code of the City of New York requires DOHMH to "keep a record of the births, fetal deaths and deaths filed with it." Section 201.03 of title 24 of the Rules of the City of New York requires the hospital where children are born to send a certificate of birth and a confidential medical report of birth to DOHMH within five business days of a birth. The court has been informed that the actual practice is that the physician in attendance at the birth generates the confidential medical report and sends it to the hospital's "birth registrar," who then generates a document described as a "report of birth." This report is then sent, electronically, to the DOHMH, which creates the official birth certificate and mails the same to the parent(s) named therein.
DOHMH argues that any interference with these reporting requirements would yield medically inaccurate facts regarding a live birth, and that the initial certificate of birth must be consistent with the confidential medical report, in order to ensure accuracy of this vital record. [*4]DOHMH further contends that the birth certificates can later be amended or supplemented to change the name of the mother if DOHMH receives proof of a judgment, order or decree relating to the parentage or adoption of {**5 Misc 3d at 429}the children and the prior birth certificate will be sealed. (See Administrative Code § 17-167.)
Plaintiffs argue that listing Mrs. Doe, the biological mother of the children, on the initial birth certificates for Baby Girls A, B and C would be more medically accurate than listing the gestational carrier who has no genetic relationship to the children. Furthermore, under the circumstances of this case where all interested parental parties are in complete and total agreement as to who the biological and intended parents of the children are, the issuance of a birth certificate naming the biological mother as the mother of the children is not likely to result in any type of fraud or mistake relating to identity, citizenship, inheritance or insurance coverage.
In view of the persuasive medical proof of filiation, the plaintiffs have the better argument here in respect of the entitlement of Mr. and Mrs. Doe to receipt of initial certificates of birth implementing their intentions. DOHMH's administrative needs and concern for the accuracy of vitals records can be accomplished within the procedural framework surrounding the issuance of birth certificates.
Accordingly, upon receipt of the confidential medical report and report of birth from the hospital, DOHMH shall issue two birth certificates, sequentially. The first set of birth certificates shall name Mrs. Roe as the mother of each child in accordance with the information generated by the hospital.[FN*] 

DOHMH shall then forthwith issue second birth certificates, naming Mrs. Doe as the mother of each child, not indicating anywhere thereon that it is an "amended," "corrected," or "supplemental" certificate. The second set of certificates shall be mailed out to the Does and the initial certificates shall be sealed.
<
>[Portions of opinion omitted for purposes of publication.]
>

Footnotes

Footnote *: Pursuant to the order of filiation obtained by Mr. Doe from the Family Court, he will be listed by the hospital as the father of the children.